Jones, J.
 

 After the execution by Chuchanis of his written guaranty of June 22, 1926,. goods exceeding the amount of the guaranty were sold and delivered by the sales corporation to George & Shanan, the last sale being dated July 19 of that year. Meanwhile George
 
 &
 
 Shanan became involved in financial difficulties which resulted in various conferences between one Cregan, the manager of the sales corporation, and the members of the firm of George & Shanan, relating to the payment or settlement of the sales corporation’s account against
 
 *78
 
 the firm. On or about July 26, 1926, a conference was had, there being present Mr. Cregan, the manager of the sales corporation, Mr. Holub, its attorney, Chuchanis, the defendant, and one óf the members of the firm of George & Shanan. After this conference a petition was filed in the afternoon of that day and proceedings had resulting in the appointment of a receiver, who took charge of the assets of the firm. The nest day, July 27, 1926, another conference was held at the office of Mr. Stevens, an attorney representing George & Shanan. At this conference there were present Mr. Stevens and his assistant Mr. Denlinger, Mr. Cregan, the manager of the sales corporation, Mr. Chuchanis, the defendant, George
 
 &
 
 Shanan, and Mr. Holub, the attorney for the sales corporation. At that time a proposition for settlement was made by Mr. Stevens, acting for the firm. Mr. Holub, attorney for the sales corporation, testified that Stevens took up the question of the assets of George & Shanan, which were then in charge of the receiver; that a petition in bankruptcy by the firm was under contemplation; that both Mr. Stevens and Mr. Denlinger “then told us [the representatives of the sales corporation] that we could either accept all that the receiver had in full payment of the claim of George & Shanan or they would file a petition in bankruptcy and we probably would get nothing for our claim. ’ ’ He further testified that Chuchanis was present at that time, but said nothing during these conferences. Mr. Holub also testified that he would advise Stevens later in the afternoon whether they would accept their proposition. Later Cregan was advised by Holub to take the settlement, since the probabilities
 
 *79
 
 were that, if a petition in bankruptcy was filed, they “would get nothing at all.” Holub then prepared a release and also a bill of sale covering the assets of the firm, and .took them over to the office of Mr. Stevens. There a bill of sale was executed by the firm partners, George
 
 &
 
 Shanan, conveying to Cregan, and his assigns, the assets then in the hands of a receiver, consisting of the firm fixtures and all its accounts receivable. The written release was executed at the same time, July 27, 1926, and signed on behalf of the sales corporation by Oregan, its resident manager. This release recited that George & Shanan were forever discharged “from all debts, claims, demands, damages, actions, and causes of actions whatsoever, from the beginning of the world to the date of these presents.”
 

 It is apparent that this release is very comprehensive; it constituted a complete adjustment and payment of the sales corporation’s claims against the firm of George & Shanan. After the execution of the bill of sale and release, the fixtures and accounts receivable were turned over to the sales corporation. - After deducting a questionable account due the firm, the fixtures and accounts applied to the reduction of the firm debt to the creditor were valued at the sum of $970.42. This composed the plaintiff’s case, at the end of which the motion of Chuchanis for a directed verdict was sustained by the court.
 

 There is no doubt that the debt of George & Shanan due the sales, corporation, and for which Chuchanis was guarantor, was fully paid and discharged as shown by the release. This being conceded, Chuchanis was also discharged from liability,
 
 *80
 
 since there can be no liability upon thp part of a guarantor if there is no valid obligation against the principal debtor. This has long been the established principle in this state. As early as 1853 this court said:
 

 “It is of the essence of the contract, that there be a subsisting valid obligation of a principal debtor. Without.a principal, there can be no accessory; and by the extinction of the former, the latter becomes extinct. This results from the nature of the obligation of suretyship. * * * It would seem to follow, from the very nature of the undertaking, that if the principal contract is absolutely void, the obligation of the surety would likewise be void.”
 

 Russell
 
 v.
 
 Failor,
 
 1 Ohio St., 327, 329, 330, 59 Am. Dec., 631;
 
 State
 
 v.
 
 Blake,
 
 2 Ohio St., 147;
 
 State
 
 v.
 
 Kuhner & King,
 
 107 Ohio St., 406, 421, 140 N. E., 344.
 

 However, counsel for the plaintiff in error contend that, since Chuchanis during the preliminary negotiations had notice of and consented to the arrangement resulting in the release of his principal, he by such conduct thereby made himself primarily liable for the amount of his guaranty. Many cases have been cited by both sides upon this feature of the case,.but they are decisive-only of the rule that should be applied to the peculiar facts controlling each particular case.
 

 Plaintiff in error makes no claim that it reserved any right against the guarantor when it effected a settlement with his principal, nor that Chuchanis made a definite agreement whereby he consented to be still liable on his guaranty. The principal case relied upon by plaintiff in error, where it is claimed
 
 *81
 
 the facts are similar to those of the instant one, is
 
 Frost
 
 v.
 
 Harbert,
 
 20 Idaho, 336, 118 P., 1095, 38 L. R. A. (N. S.), 875. Passing by the effect of the Idaho Code holding a guarantor liable primarily after his obligation became absolute, i't is very evident that the decisive features of the Idaho case were dissimilar to such as are here disclosed. . In the Idaho case it was evident that the contract releasing the original debtor was made between the creditor, the principal debtor, and the guarantor, and it was agreed between them that the proceeds resulting from the sale ,of the securities should be applied on the debt guaranteed by the guarantor. There is no agreement of that character in this case, and. there was no consideration beneficial to the guarantor, whereby the debt which he was obligated to pay was to be reduced by partial payment; nor was there any agreement shown on the part of Chuchanis that the “release should not affect in any manner whatsoever the liability of the defendant,” as pleaded in the reply.
 

 Reversal is sought chiefly because of the testimony given by Cregan, who represented the creditor. His testimony is very vague and confusing. At the final settlement between the creditor and debtor Chuchanis was a passive witness only, and said nothing during the final conference that resulted' in the adjustment. Cregan testified that prior to this final conference the guarantor had said that anything done would be satisfactory, and that he had agreed to sign certain notes for the total amount of his guaranty, but that this promise was later repudiated. But Cregan also testified that in a conversation with Chuchanis, prior to the settlement,
 
 *82
 
 Chuchanis was desirous that the amount realized from the assets turned over to the creditor should be applied upon his guaranty and not to the entire account. Piad this been agreed to by the parties, a new consideration — one favorable to Chuchanis— would underlie his liability. Cregan also testified that he was told by Chuchanis that the latter had also executed a release to George & Shanan of all liabilities he might have against them. The record discloses that the final agreement resulting in the execution of the release of the debtor was made between the principal debtor and the creditor, and at a conference wherein the guarantor took no part; they agreed, not for a partial payment on the account, but for its release in full. It is evident from the record that Chuchanis desired that the amount realized from the debtor’s assets should be applied on his guaranty, thus reducing the amount of his liability; not having been thus applied, the transaction between the creditor and the principal debtor deprived the guarantor of his right to pursue the debtor’s assets, thereby reducing his liability on his guaranty, and, since this privilege was denied him, Chuchanis was necessarily injured by the sale and conveyance of his principal’s property to the creditor. Since it is indicated that the guarantor, as well as the creditor, released the principal debtor, it is incomprehensible that. the guarantor would orally consent to any arrangement that would prejudice his rights as a guarantor, or deprive him from taking action against his principal, should he be found later to be liable as surety.
 

 For the reasons stated, it is the opinion of this
 
 *83
 
 court that the judgments of the lower courts should be affirmed.
 

 Judgment affirmed.
 

 Day, Allen, Kinkade, Robinson and Matthias, JJ., concur.