**In re FARLEY, INC., Revested Debtor.**

**Bankruptcy No. 91 B 15610.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

June 7, 1999.

Mark K. Thomas, Amy A. Hijjawi, Katten Muchin & Zavis, Chicago, IL, for Debtor.

Benjamin J. Randall, Lawrence Karlin, Rusty A. Payton, Katz Randall & Weinberg, Chicago, IL, for Claimant.

*FINDINGS OF FACT, CONCLUSIONS OF LAW, ANDMEMORANDUM OPINION ON TRIAL OF OHIO BUREAUOF WORKERS' COMPENSATION AMENDED CLAIM NO. 509*

JACK B. SCHMETTERER,
Bankruptcy Judge.

This proceeding was started on July 24, 1991, by the filing of an involuntary peti-

tion against Farley Inc. ("Farley" or "Debtor") under Chapter 7 of the Bankruptcy Code. Farley consented to entry of an order for relief, and exercised its right under 11 U.S.C. § 706(a) to convert the proceeding to one under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101, *et seq.* Farley operated as debtor-in-possession until December 1, 1992, when its Fourth Amended Plan of Reorganization was confirmed.

On December 9, 1991, the Ohio Bureau of Workers' Compensation ("Bureau" or the "State") filed its proof of claim, Claim No. 509, amended on September 18, 1995, again on September 26, 1995, and finally September 10, 1997 ("Claim 509"). The final version claims reimbursement based upon Farley's asserted statutory obligation for workers' compensation payments, a common law right of suretyship, and an executed guarantee document.

Farley objected to an earlier version of this claim and moved for summary judgment. Although that motion was granted, the ruling was reconsidered and the motion denied as it was determined that the initial ruling was based on an inadequate record. The final amended proof of claim was later filed and the matter was set for trial.

At trial, the parties stipulated to all fact issues and then rested, leaving only matters of law to be determined. Final arguments were presented through post-trial filings. The Court now makes and enters the following Findings of Fact and Conclusions of Law. Pursuant thereto and based upon the pleadings, exhibits, stipulations, undisputed findings in the earlier summary judgment proceeding[1] and for rea-

1. Earlier published opinions and findings are available at: *In re Farley, Inc.*, 225 B.R. 407 (Bankr.N.D.Ill.1998); *In re Farley, Inc.*, 211 B.R. 889 (Bankr.N.D.Ill.1997), vacating *In re Farley, Inc.*, 203 B.R. 681 (Bankr.N.D.Ill. 1997).

The Bureau originally filed its claim under Ohio Rev.Code § 4123.351(G) to recover payments made to Farley's employees out of the Surety Bond Fund. Debtor objected to that claim on several grounds including that the provision the Bureau relied upon did not exist at the time the claim arose and was thus

sons stated herein under Ohio Law, the claim as amended will be entirely disallowed, and judgment will enter separately thereon in favor of the Debtor. The State of Ohio has proved to be the victim of a gap in its statute that was amended too late to help it in this case.

## JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This matter is here pursuant to 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. Venue lies properly under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance and disallowance of claims).

## FINDINGS OF FACT

### Farley Operations Under the Ohio Act

Prior to the bankruptcy filing, Farley operated in the state of Ohio at its Doehler–Jarvis Division. It operated in Ohio from October 1982 through July 25, 1990, under the name Farley Metals, Inc. Farley Inc. was the parent corporation of Farley Metals. In February 1988, Farley Metals changed its corporate name to Farley Inc.

Pursuant to the Ohio Workers' Compensation Act ("Ohio Act"), Farley elected and was granted the privilege of operating in Ohio as a self-insuring employer. It was in compliance with Section 4123.35 and Section 4123.351 of the Ohio Act at all times that it operated and employed persons in the State of Ohio.

Under the Ohio workers' compensation system, an employer may apply for the privilege of self-insurance rather than paying premiums to the state insurance fund. Section 4123.35 provides the requirements for self-insurance. As discussed below, a self-insured employer was originally able to purchase a bond from any number of commercial bond companies. The statute was later amended to require a self-insurer to purchase the bond from a state run surety bond program.

During the period October 1, 1982, through October 1, 1986, Farley posted the following surety bonds issued by private third-party sureties:

| SURETY | BOND PERIOD | BOND AMOUNT | BOND NUMBER |
|---|---|---|---|
| The Travelers Indemnity Co. | 10/1/82 to 10/1/83 | $ 565,000 | 19SE2453 |
| The Travelers Indemnity Co. | 10/1/83 to 10/1/84 | $ 205,000 | 19SE2453 |
| Safety Mutual Casualty Corp. | 10/1/84 to 10/1/85 | $ 680,000 | SIB3510H |
| Employers Reinsurance Corp. | 10/1/85 to 10/1/86 | $1,000,000 | DC–33599X |

Each of the bonds posted and identified above provided surety solely for the speci-

inapplicable, and moved for summary judgment. While arguing the motion for summary judgment, the Bureau realized its mistake and changed the statute on which it relied to § 4123.75, seeking reimbursement for the Surplus Fund.

Problems, however, still existed with the Bureau's pleadings. Those pleadings alluded to the existence of Farley's surety bonds and stated that all payments had been made from the Surety Bond Fund and not the Surplus Fund. It was therefore determined initially on the Debtor's motion for summary judgment that the Bureau had no ability to recover under § 4123.75. *In re Farley*, 203 B.R. 681, 691 (Bankr.N.D.Ill.), *vacated after reh'g*, 211 B.R. 889 (Bankr.N.D.Ill.1997). The Bureau subsequently moved for reconsideration. Reconsideration was granted after a finding that Farley had not sufficiently shown which fund had made the workers' compensation payments. *Farley*, 211 B.R. at 896. In addition, the Bureau was then permitted to amend its claim to include alternate claims for reimbursement under the common law of suretyship and pursuant to an unconditional guarantee signed by Farley.

After the parties more fully focused on the issues as trial approached, they agreed that all payments had been made out of the Surplus Fund which had been reimbursed for those payments by the Surety Bond Fund.

fied Bond Period (i.e. claims year) stated. The Bureau does not make any claim for payment from Farley based upon workers' compensation claims which arose between October 1, 1982, and October 1, 1986, during periods for which those bonds were posted.

Pursuant to an amendment of the Ohio Act effective August 22, 1986, self-insuring employers were required to obtain surety bonds from the Self-insuring Employers' Surety Bond Fund ("Surety Bond Fund"), now known as the Self–Insuring Employer's Guaranty Fund. The Industrial Commission of Ohio ("Commission") was the entity required by the amended Ohio Act to issue the bonds. The state thereby was to become its own guarantor through the Commission bonds. However, despite the change in law giving it that responsibility, it never actually issued bonds to Farley or to any other self-insuring employer.

Farley nonetheless paid all premiums charged to it by the Bureau on behalf of the Surety Bond Fund under the amended Ohio Act. Farley also paid all assessments charged to it by the Bureau to cover the Bureau's costs and fees incurred in administering the Surety Bond Fund. Farley thereby paid the following amounts to the Surety Bond Fund which entitled it to issuance of statutory surety bonds from October 1, 1997, to September 30, 1990, the period now in dispute (the "Claims Period"):

| PERIOD | AMOUNT FARLEY PAID |
|---|---|
| 10/01/87 to 9/30/88 | $ 2,400.00 |
| 10/01/88 to 9/30/89 | $25,062.84 |
| 10/01/89 to 9/30/90 | $49,969.54 |

On or about September 4, 1990, Farley informed the Bureau that it had sold its Doehler–Jarvis division and requested that its self-insurance privileges be rescinded retroactively as of July 25, 1990. Farley's active self-insured status was thereupon canceled by the Bureau. After cancellation of its self-insured status effective July 25, 1990, Farley continued to process workers' compensation claims which arose prior to July 25, 1990. On or about April 2, 1991, Farley notified the Bureau that, as of May 1, 1991, it no longer had the financial ability to pay claims which arose during its self-insurance period. Farley also notified the Bureau that it had posted security for each of the claims years at issue to cover payment of the claims of its former workers.

Subsequent to May 1, 1991, the Bureau started to administer employee claims that arose during Farley's self-insurance period. As discussed below, Farley and the Bureau have stipulated that the Bureau has paid $2.6 million on account of claims by former Farley workers which arose during the Claims Period. Each payment the Bureau made in that regard was made from the Surplus Fund established under the Ohio Act and then charged to the Surety Bond Fund under the same Act. The Surety Bond Fund then reimbursed the Surplus Fund for each payment.

The Surety Bond Fund is, and always has been, funded exclusively by the self insuring employers operating in Ohio, either through assessments paid or from recoveries received by the Bureau from self insured employers on behalf of the Surety Bond Fund. The Bureau also administers the State Insurance Fund which is funded exclusively by employers operating in Ohio. A portion of the State Insurance Fund is reserved and referred to as the Surplus Fund. The Surety Bond Fund and the Surplus Fund are distinct statutory funds with distinct payment obligations and bank accounts. The Bureau makes payments on behalf of each of the funds through the State Insurance Fund.

### Stipulation as to Maximum Possible Liability

On June 17, 1998, the parties entered into a stipulation herein. Among other things, the stipulation provided that, if Farley is found to be liable to the Bureau on Claim 509, Farley's possible liability would be $2.6 million for total payments

already made by the Bureau to former Farley employees. It was further agreed that liability (if adjudged) would also lie for certain projected permanent total disability employee claims to be liquidated in the future, amounting to the total of actual payments to be made by the State to former Farley employees if and when such projected payments are actually made. The parties also stipulated that, if the amended claim were allowed, it would be treated as a Class 5 General Unsecured Claim under Debtor's confirmed plan of reorganization.

Additional facts set forth in the Conclusions of Law will stand as additional Findings of Fact. Legal conclusions in the Findings will stand as additional Conclusions of Law.

### CONCLUSIONS OF LAW

■ A filed proof of claim constitutes prima facie evidence of the claims validity. Fed. R. Bankr.P. 3001(f). The initial burden of going forward falls on an objector to the claim, but once an issue is presented the burden shifts back to claimant who has the ultimate burden to prove entitlement. *See Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied*, (1993); *see also Matter of Chapman*, 132 B.R. 132, 143 (Bankr.N.D.Ill. 1991) and cases cited.

The Bureau's final version of its amended proof of claim was filed under three alternative theories: (1) Ohio Rev.Code Ann. § 4123.75 which provides a remedy to an employee of a "non-complying" employer; (2) under the common law of suretyship; and (3) pursuant to an unconditional guarantee executed by Farley Inc. on behalf of Farley Metals which assertedly guaranteed all amounts due under the Ohio Workers' Compensation Act ("Act"). It is agreed that Ohio law applies.

### I. *The Bureau Has Standing to Pursue This Action*

■ Farley argues at the outset that the Bureau's claim on behalf of the Surplus Fund cannot lie because that Fund suffered no injury in fact. The Bureau stipulated that, even though payments on Farley's employees' workers' compensation claims were made out of the Surplus Fund, the Surety Bond Fund has already reimbursed the Surplus Fund in full. As a result, Farley argues that the Surplus Fund has suffered no damage.

■ Any plaintiff or claimant must indeed show some actual or threatened injury as a result of the conduct of or otherwise show a personal stake in the outcome. Although the Surplus Fund has at this point been reimbursed by the Surety Bond Fund, the Surplus Fund did pay out considerable sums to Farley's former employees. The fact that the Surplus Fund was reimbursed by the Surety Bond Fund can hardly be said to defeat the Bureau's standing to complain about the original asserted harm to the Surplus Fund merely because any received monies would have to be reshuffled between the two state funds.

Farley also argues that the only proper party to assert a claim under § 4123.75 is the Ohio Attorney General. As stated in § 4123.75:

... The commission shall institute proceedings to recover from the employer any moneys paid from the surplus fund and to secure the employer's payment of the award. The employer shall pay such award in the manner and amount fixed thereby or shall furnish to the commission a bond, in such amount and with such sureties as the commission requires, to pay such employee such award in the manner and amount fixed thereby.

...

If the employer fails to pay such compensation to the person entitled thereto, or fails to furnish such bond, within a period of ten days after notification of

such award, the award shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the commission, *and the commission shall certify the same to the attorney general who shall forthwith institute a civil action against such employer in the name of the state for the collection of the award.*

Ohio Rev.Code § 4123.75 (Emphasis added). Here, the Bureau certified a claim for $12 million (*see* Ex. 18), but this action was brought not in the name of the Ohio attorney general but by Bureau attorneys.

Under § 4123.92, the attorney general or county prosecuting attorney shall institute and prosecute actions to enforce the state workers' compensation laws:

> Upon request of the industrial commission or the administrator of workers' compensation, the attorney general, or under his direction the prosecuting attorney of any county in cases arising within the county, shall institute and prosecute the necessary actions or proceedings for the enforcement of this chapter, or for the recover of any money due the state insurance fund, or any penalty, and shall defend in like manner all suits, actions or proceedings brought against the administrator, the workers' compensation oversight commission, industrial commission, or the members of

the oversight commission, or industrial commission in their official capacity. Ohio Rev.Code § 4123.92. Moreover, under the same Code, any assistant or special counsel designated by the attorney general to prosecute such an action has the full authority of the attorney general. Ohio Rev.Code § 109.84.

The Bureau sues here as the designated representative of the State Insurance Fund, and this action was brought by the Bureau through its counsel representing that they act as Special Assistants to the Ohio Attorney General. Farley has not sought to demonstrate that this representation was not authorized in fact by the Ohio Attorney General, and it never sought (and thus waived) an evidentiary hearing on validity of the asserted Special Assistant status.

The Bureau also cites to other Ohio statutory provisions which it claims give authority to bring the instant claim, but those are not in point.[2]

 Apart from § 4123.92, which allows the attorney general of Ohio to bring this action, Ohio case authority supports the proposition that the Bureau has authority to bring or defend actions which impact on the funds it administers. *See State ex rel. LTV Steel Company v. Gwin,* 64 Ohio St.3d 245, 594 N.E.2d 616, 618, *reh'g denied,* 65 Ohio St.3d 1413, 598 N.E.2d 1165 (1992) (administrator found to have stand-

---

**2.** The Act specifically charges the Bureau with the duty to administer the Surety Bond Fund. § 4123.351(D)(2). The general power and duties of the administrators of workers' compensation are set forth in Section 4121.121. The administrator's duties with respect to the State Insurance Fund are codified at Sections 4123.31, 4123.32 and 4123.44. In particular, it is the duty of the administrator to provide for the collection, custody and safekeeping of the funds. The Bureau has the same administrative duties with respect to the Surety Bond Fund as it has with regard to the State Insurance Fund. Sections [sic] 4123.351(D)(2).

Bureau's Response at 28.

However, those provisions do not give the Bureau authority to bring this action. Section 4123.351(D)(2) only provides that the ad-

ministrator has the same powers to *invest* any of the surplus or reserve belonging to the Surety Bond Fund are delegated to the administrator and the Commission with respect to the State Insurance Fund. Ohio Rev.Code § 4123.351(D)(2). Moreover, the only purpose of § 4123.121 is to prevent any injunction from suspending or restraining Bureau or Commission orders. Section 4123.31 requires the Bureau and Commission to provide for custody, safekeeping, and deposit of all funds received by it prior to turning the money over to the state treasurer. Section 4123.32 allows the administrator to adopt rules with respect to collection, maintenance and disbursements of the State Insurance Fund. Finally, § 4123.44 gives the administrator authority to invest the surplus in the State Insurance Fund.

ing to intervene in action). Moreover, the 1993 amendment to § 4123.351 of the Ohio Act expressly gave standing to the agency to collect from a defaulting, self-insuring employer, though the cause of action created by that amendment cannot apply to the case here. *See* fn. 4.

Further, as administrator of the funds in question, the Bureau would appear to have standing to bring the common law claims for reimbursement as a surety and under the asserted guarantee. Thus, the Bureau has sufficient standing to pursue all parts of its pending amended claim.

## II. *The Bureau Has No Claim Pursuant to Ohio Rev.Code Ann. § 4123.75*

 Under the Ohio workers' compensation system, an employer may either pay workers' compensation premiums to the state insurance fund or, if approved by the Bureau, may self-insure under the Ohio Act. *In re Suburban Motor Freight, Inc.*, 36 F.3d 484, 486 (6th Cir.1994) (citing Ohio Rev.Code Ann. §§ 4123.35(A) and (B)). "The employer. is granted the privilege of self-insured status by the grace of the legislature, and such status requires the self-insured employer to assume the obligation to pay claims in lieu of the broad protection afforded by the state fund." *American Ins. Co. v. Bureau of Workers' Comp.*, 84 Ohio App.3d 288, 291–2, 616 N.E.2d 979, 981 (10 Dist.1992).

Section 4123.35 (*Payments to state insurance fund; standards, surety bonds, applications, and rules for self-insurers*) governed requirements for self-insurance:

(B) Provided, that such employers and publicly owned utilities who will abide by the rules of the commission and who may be of sufficient financial ability to render certain the payment of compensation to injured employees or the dependents of killed employees, and the furnishing of medical, surgical, nursing, and hospital attention and services and medicines, and funeral expenses, equal to or greater than is provided for in

sections 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code, and who do not desire to insure the payment thereof or indemnify themselves against loss sustained by the direct payment thereof, *may, upon a finding of such facts by the commission, be granted the privilege to pay individually such compensation, and furnish medical, surgical, nursing, and hospital services and attention and funeral expenses directly to such injured employees or the dependents of killed employees.* The commission may charge employers or publicly owned utilities who apply for the privilege of paying compensation directly a reasonable application fee to cover the commission's costs in connection with processing and making a determination with respect to an application. All employers granted the privilege to pay compensation directly shall demonstrate sufficient financial and administrative ability to assure that all obligations under this section are promptly met. The commission shall deny the privilege where the employer is unable to demonstrate his ability to promptly meet all the obligations imposed on him by this section.

. . .

(C) *The commission shall require a surety bond from employers and publicly owned utilities who are granted the privilege to pay compensation directly, issued pursuant to section 4123.351 of the Revised Code, that is sufficient to compel, or secure to injured employees, or to the dependents of employees as may be killed, the payment of compensation and expenses,* which shall in no event be less than that paid or furnished out of the state insurance fund in similar cases to injured employees or to dependents of killed employees whose employers contribute to said fund . . . .

Ohio Rev.Code Ann. § 4123.35 (emphasis

added).[3]

Prior to 1987, a self-insured employer could purchase a bond from any number of commercial bond companies, and Farley did so at that time. As earlier noted, it purchased four surety bonds covering the periods from October 1, 1982 through October 1, 1986. All of those bonds still remain in effect and have not been extinguished, though none involve the years for which the Bureau claim is made.

Effective at the end of 1986, § 4123.351 was amended to limit a self-insuring employer's ability to purchase a bond to a state operated surety bond program. Section 4123.351 (*Surety bond program for self-insuring employers; default by employer; self-insuring employers' surety bond fund; reinsurance; rules; state's liability*) governed the requirements for self-insurance:

> (A) Every employer and publicly owned utility who is granted the privilege of paying compensation directly shall obtain from the industrial commission a surety bond issued pursuant to this section. The bond shall provide for payment from the self-insuring employers' surety bond fund to the commission of any amounts paid by the commission in compensation or benefits to employees of the employer in order to cover any default in payment by the employer. *The bond issued to each employer shall be for a face amount sufficient to cover the estimated potential liability of that employer.*
>
> (B) The commission shall operate surety bond program for self-insuring employers. The program shall make available to employers and publicly owned utilities who are granted the privilege of paying compensation directly surety bonds at rates which are competitive with rates offered by companies mentioned in section 3929.10 of the Revised Code. The rates established each year shall be as low as possible but such as will assure sufficient reserves to guarantee the payment of any claims against a bond the commission reasonably anticipates will occur. The commission's program shall in all practical respects function as a surety bond company but is not subject to sections 3929.10 to 3929.18 of the Revised Code or to regulation by the superintendent of insurance.
>
> (C) If a self-insuring employer defaults, the commission shall recover payments of compensation or benefits from the self-insuring employer's surety bond. *Payment from the bond relieves the employer of any liability for damages at common law or by statute that arises out of the injury or occupational disease that forms the basis of the workers' compensation claim to the extent of the payment.*

Ohio Rev.Code Ann. 4123.351 (emphasis added). In addition, by Joint Resolution of the Industrial Commission of Ohio, the Surety Bond Fund was created. Self-insuring employers contributed amounts fixed by the commission to the Surety Bond Fund. Such payments were made pursuant to a formula which was "required to closely duplicate the underwriting of surety bonds by private companies." Joint Resolution at 2. Moreover, "[A]ssessments against self-insured employers for contribution to the Surety Bond Fund shall be timely adjusted to recoup these amounts and to assure sufficient reserves to guarantee the payment of any claims. against the Program that the Commission reasonably anticipates will occur." *Id.*

Farley made all such required payments into the Surety Bond Fund, as earlier detailed. Despite the fact that the statute clearly read "[t]he bond *issued* to each employer shall be for a face amount sufficient to cover the estimated potential liability of that employer," *see* 4123.351(A) (emphasis added), no bonds were actually

---

**3.** As a number of the relevant statutes were amended in the years after the workers' compensation claims at issue arose, the statutes referred to herein are cited as they stood during the Claims Period.

issued by the state. Nonetheless, as earlier described, after Farley notified the Bureau on September 4, 1990, that it was no longer doing business in Ohio and requested that its self-insured privileges be rescinded, on September 25, 1990, the Bureau canceled Farley's self-insured privilege effective July 25, 1990.

Thereafter, Farley directly paid its employees their workers' compensation claims through April 1991. Ohio assumed responsibility for such payments after that date. Moreover, during the time the claims at issue here arose, § 4123.351 offered the state Surety Bond Fund no express right of reimbursement against a defaulting self-insurer. Such a remedy was added by amendment to § 4123.51 in 1993,[4] but the Bureau concedes that the amendment now found in § 4123.351(G) does not apply in this case because it is agreed that "the statute in effect at the time the claim arose must be applied" to determine the Bureau's claim. Joint Pretrial Statement at 3.

However, the Bureau argues that it has a right of recovery here pursuant to § 4123.75 which was in effect when the claims at issue here arose and which gave the employee a remedy against a noncomplying employer and gave the state a right to reimbursement from that employer. Section 4123.75 (*Remedy of employee against noncomplying employer*) authorized the Ohio Attorney General to institute action against a noncomplying employer to secure payment to the commission of funds paid out of the Surplus Fund to its former employees. *State, Indus. Comm'n v. Am. Dynamic Agency, Inc.,* 70 Ohio St.2d 41, 44, 434 N.E.2d 735, 737 (1982). Specifically that section provided:

Any employee whose employer has failed to comply with section *4123.35 of the Revised Code,* who has been injured or has suffered an occupational disease in the course of his employment, which was not purposely self-inflicted, or his dependents in case death has ensued, may file his application with the industrial commission for compensation and the commission shall hear and determine such application for compensation in like manner as in other claims and shall make such award to such claimant as he would be entitled to receive if such employer had complied with section 4123.35 of the Revised Code. *Payment of the claim shall be made promptly from the statutory surplus fund.* Such payment shall not bar any action under section 4123.77 of the Revised Code. If a recovery is made in an action under section 4123.77 of the Revised Code any funds paid from the state insurance fund under this section shall be repaid by the claimant. The commission shall institute proceedings to recover from the employer any moneys paid from the surplus fund and to secure the employer's payment of the award. *The employer shall pay such award in the manner and amount fixed thereby or shall furnish to the commission a bond, in such amount and with such sureties as the commission requires, to pay such employee such award in the manner and amount fixed thereby.*

. . .

*Any employee whose employer has elected to pay compensation to his injured employees or to the dependents of his killed employees in accordance with section 4123.35 of the Revised Code, in the event of the failure of his employer to pay such compensation or furnish such medical, surgical, nursing, and hospital services and attention or funeral ex-*

4. In 1993 § 4123.351 was amended to include the following direct cause of action against a defaulting self-insurer:
(G) The administrator, on behalf of the self-insuring employers' guaranty fund, has the rights of reimbursement and subrogation and shall collect from a defaulting self-insuring employer or other liable person all amounts he has paid or reasonably expects to pay from the fund on account of the defaulting self-insuring employer.

*penses, may file his application with the commission or the bureau for the purpose of having the amount of such compensation and such medical, surgical, nursing, and hospital services and attention or funeral expenses determined; and thereupon like proceedings shall be had before the commission and with like effect as provided in this section.*

Ohio Rev.Code Ann. § 4123.75 (emphasis added). Farley argues that this section does not apply as it was in full compliance throughout the claims period by making all required premium type payments into the Surety Bond Fund. The Bureau argues that Farley's failure to pay its workers' claims directly was non-compliance.

**1. *Farley has not failed to comply with § 4123.35 as required to trigger application of § 4123.75***

■ Farley was not a non-complying employer. The Ohio Act did not expressly define "compliance" in § 4123.75. However, reading the Act as a whole, compliance with § 4123.35 (earlier quoted) involved making payments to the Surety Bond Fund under § 4123.351 in the case of a self-insured employer or payments to the State Insurance Fund for a premium paying employer, rather than failure to pay directly workers' compensation claims which could constitute "default" under § 4123.351. Therefore, Farley is not liable under § 4123.75 for the workers' compensation claims paid by the state agency to Farley's former employees.

As § 4123.75 clearly stated, it only allowed recovery against an employer that failed to comply with § 4123.35. The latter section dealt with the application and evaluation procedures for becoming a self-insured employer as well as the procedures for purchasing a "surety bond" from the state. *See* § 4123.35. As a result, the Bureau has no right under § 4123.75 to recover against a self-insuring employer that purchased a surety bond or made premium

payments to the state, even though it failed to or was unable to make direct payments on workers' compensation claims. In essence, the state wants an employer that paid premiums for a bond to pay the obligations that the bond was to cover merely because the state agency did not actually issue the bond.

Indeed, the Bureau issued a Certificate of Employer's Right to Pay Compensation Directly for each of the claims years in question which specifically stated:

THIS IS TO CERTIFY that on the date hereof the above named employer having met the requirements provided in Section 4123.35 of the Ohio Revised Code has been granted authority by this Commission to pay compensation direct to its injured or dependents of killed employees as provided in said section for the period above set forth.

These certificates were issued for the periods from October 1987 through October 1990. Farley ceased doing business in Ohio during 1990, and its self-insurance privileges were rescinded during July 1990. It would seem that even the Bureau agreed that Farley had complied with 4123.35.

■ When interpreting a statutory provision, one must begin with the language of the statute. Where the language is clear and unambiguous, no further inquiry into legislative history is necessary. *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 888 (7th Cir.1996). Further, the Ohio courts agree that all statutes which relate to the same subject matter must be read *in pari materia. Cater v. City of Cleveland,* 83 Ohio St.3d 24, 29, 697 N.E.2d 610, 615 (1998). "In construing statutes together, this court must give full application to both statutes unless they are irreconcilable and in hopeless conflict." *Id.*

The entire enactment should be considered in determining the spirit or meaning, and intent must be gathered from the entire statute. Sections and acts in pari materia, that is, 'in relation to the same matter subject or object,' should

be construed together. Stated differently, it is the rule that statutes relate to the same or similar subject matter or subject of law should, where a case calling for the application of both is presented, be read together as if they were a single statute, and both should be reconciled, harmonized and made to apply, and give meaning and effect, so as to render their contents operative and valid. Thus the various statutory provisions affecting a particular subject should be construed and applied so as to accomplish the manifest purpose of their enactment and give full force and effect to the legislative intent.

*Suez Co. v. Young,* 118 Ohio App. 415, 423, 195 N.E.2d 117, 122–23 (1963).

▇▇▇▇▇ Moreover, statutory provisions must be interpreted in such a way "to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section" *Damato v. Hermanson,* 153 F.3d 464, 471 (7th Cir.), *reh'g denied,* (1998). Words and phrases should be given their ordinary and natural meaning to "avoid rendering them meaningless, redundant, or superfluous...." *Matter of Merchants Grain, Inc. By and Through Mahern,* 93 F.3d 1347, 1353–54 (7th Cir.1996), *cert. denied,* 519 U.S. 1111, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997).

Thus, by looking at the language of § 4123.75,[5] it is clear that compliance under § 4123.35 refers to making premiums to the State Insurance Fund or paying assessments into the Surety Bond Fund, both of which Farley did. Section 4123.35 gives the criteria the Bureau looks at when deciding a self-insurance application and discusses the bond requirement but makes no reference to actually paying employee claims. Ohio authority views § 4123.35 as requiring the Industrial Commission "to adopt rules establishing a minimum level of performance as a criterion for an employer to gain permission to self-insure in the area of worker's compensation." *Vandemark v. Southland Corp.,* 38 Ohio St.3d 1, 4, 525 N.E.2d 1374, 1377 (1988).

One Ohio Supreme Court opinion cited here by claimant stated in dicta that the Bureau considers a self-insured employer to be in non-compliance with the Ohio Act when it fails to make payments to an injured employee "in violation of an order by the Commission to do so." *Holben v. Interstate Motor Freight System,* 31 Ohio St.3d 152, 156, 509 N.E.2d 938, 941 (1987). But that opinion did not determine whether the employer in that case was in non-compliance as that term is used in § 4123.75. Neither the Ohio Act nor the Ohio Supreme Court have ever defined "compliance" as it specifically relates to § 4123.75. *Holben's* vague reference to "noncompliance" can hardly be seen as a definition. Moreover, the sole issue decided in *Holben* had to do with the Ohio Act's definition of an employer. *See Holben,* 31 Ohio St.3d at 154, 509 N.E.2d at 940. The ruling in *Holben* did not address § 4123.75 and the opinion's dicta on noncompliance was not applicable to the issue here.

Further, the Ohio Supreme Court opinion in *Holben* stated that "a surety bond obtained by a self-insured employer pursuant to R.C. § 4123.35 is the legal equivalent of a contribution to the State Insurance Fund, as the bond provides a financial source from which benefits and compensation may ultimately be paid." *Holben,* 31 Ohio St.3d at 156, 509 N.E.2d 938, 941. Thus, precedent interpreting § 4123.75 as it applies to an employer that pays premiums to the State Insurance Fund can be used as support for § 4123.75 as it applies to a self-insured employer. Under Ohio law, an employer who fails to pay premiums into the State Insurance Fund is a non-complying employer under § 4123.75. *State of Ohio v. American Dynamic Agency, Inc.,* 1981

---

**5.** The Bureau cites to Ohio Rev.Code § 1.49 ("aid in construction of ambiguous statutes") as giving factors which the court should look to when construing § 4123.75. However, the language of § 4123.75 does not require the aid of § 1.49 to read it.

WL 3179 (Ohio App.10th Dist.1981), *aff'd*, 70 Ohio St.2d 41, 434 N.E.2d 735 (1982); *Perry v. S.S. Steel Processing Corp.*, 40 Ohio App.3d 198, 200, 532 N.E.2d 783, 785 (1987) (stating "R.C. 4123.35 requires that the employer tender semiannual premium payments and provides that the certificate of premium payment is prima facie evidence of compliance. This section reveals the intent of the legislature to make premium payment the test of compliance with the law."). It follows under Ohio law that an employer who failed to provide a surety bond (or make payments into the Surety Bond Fund) would also be a non-complying employer. As discussed, Farley made those required payments so it was not non-complying.

In addition, the Bureau never recorded (and never submitted as an exhibit in evidence) any Certificate of Noncompliance, even as to non-payment of premiums due. Pursuant to § 4123.78:

If any employer fails to comply with section 4123.35 of the Revised Code in accordance with the rules of the administrator of workers compensation, the administrator shall file with the county recorder of any counties in which the employer's property is located its certificate of the amount of premium due from the employer....

Ohio Rev.Code § 4123.78. While this section only refers to payments of "premiums" and not specifically to the furnishing of a bond, the payment of premiums into the Surety Bond Fund should have triggered furnishing of a bond as early discussed. Section 4123.78 thereby further demonstrates that noncompliance under the statutory scheme in effect when the instant claims arose would have been failure to pay premiums into the State Insurance Fund or to provide a bond or to make payment to the Surety Bond Fund depending on whether one looks at the law before or after the 1986 statutory amendment.

The Bureau itself referred to Farley's behavior as a default rather than non-compliance in its own exhibit, the May 15, 1991, Order of the Self–Insured Review Panel of the Bureau of Workers' Compensation which stated:

Inasmuch as the company is no longer willing or able to pay its workers' compensation claims, it is clear that this employer has not demonstrated the financial and administrative ability to continue to exercise the privilege of self-insurance. For this reason, the Panel finds the employer to be *in default*, and hereby revokes its self-insured privileges.

Amended Claim, ex. 4 (emphasis added). That Order did not say that Farley had "failed to comply with section 4123.35."

The Bureau further cites to the Ohio Administrative Code as stating that a "finding of non-compliance may be predicated upon, inter alia, continued failure to pay compensation or benefits in accordance with law in a timely manner." Bureau's Response at 7 (citing Ohio Admin. Code § 4123–19–06). The Bureau's citation, however, is misplaced. That cited administrative code provision states that failure to pay compensation or benefits is a factor to consider for possible revocation of self-insurance status, not that it constitutes non-compliance.

Finally, if § 4123.75 were read to provide a direct right of recovery from an employer such as Farley that complied with § 4123.35, but defaulted in direct workers' compensation payments, it would render the 1993 amendment to § 4123.351(G) (see earlier discussion at fn. 4) redundant and superfluous. Section 4123.351(G) as amended both created a new course of action ("the right of reimbursement and subrogation") and standing to collect from a defaulting self-insuring employer. It provided a direct right of recovery on behalf of the Self-insuring Employers' Guaranty Fund (which replaced the Surety Bond Fund) against a defaulting self-insurer. If § 4123.75 was read to provide the Bureau with the same form of recovery, then the new

§ 4123.351(G) enacted in 1993 would have been unnecessary and its adoption meaningless. It has not been demonstrated from statutory language, legislative history, or Ohio judicial precedent that the Ohio legislature passed an amendment which merely created a redundant and unnecessary statutory remedy. That amendment was rather to cover what the legislature perceived to be a statutory gap in the Bureau's remedies, a solution that came too late to help support claims based on events before the 1993 amendment.

There is no merit to the argument that the 1993 amendment was simply a codification of the Bureau's earlier right to reimbursement. The Bureau's own 1993 Annual Report explains the distinction between the Surety Bond Fund and the Self–Insuring Employer's Guaranty Fund.

> The SIEGF [Self–Insuring Employer's Guaranty Fund] was created October 1993 by Ohio House Bill 107 (HB107) and replaces SBF [Surety Bond Fund] which was abolished by HB107 ... The SIEGF is an assessment fund providing for payment of compensation and benefits to employees of self-insured employers in order to cover any default in payments by self-insured employers. The SBF provided surety coverage to self-insured employers to cover liability for compensation and benefits for self-insured workers' compensation claims in case of default by the self-insured employer.

This passage clearly suggested the need at that time for statutory provision to enable direct right of recovery. Subsequent to the 1993 amendment, no surety bonds were to be issued by the state. Rather, employers were to pay assessments into the "SIEGF." Should an employer default, no bond was to be on file to provide coverage. Rather, the state was to pay the employee claims and was given authority to sue for recovery of such payment from the employer. The amendment to § 4123.351 did not codify existing law; it was a change in law to adjust for creation of a new statutory fund and to cover what was viewed as a gap in former law.

## 2. Even if Farley had been a non-complying employer, it has no further liability under § 4123.75

The State argues that a portion of section 4123.75 specifically defines a non-complying employer as one who defaults on direct payments of the applicable part of compensation to injured employees or their dependants. The earlier quotation of the applicable part of that provision is worth repeating:

> Any employee whose employer *has elected* to pay compensation to his injured employees or to the dependents of his killed employees in accordance with section 4123.35 of the Revised Code, in the event of the failure of his employer to pay such compensation or furnish such medical, surgical, nursing, and hospital services and attention or funeral expenses, may file his application with the commission or the bureau for the purpose of having the amount of such compensation and such medical, surgical, nursing, and hospital services and attention or funeral expenses determined; and thereupon like proceedings shall be had before the commission and with like effect as provided in this section.

Ohio Rev.Code § 4123.75 (emphasis added).

This passage does not support the Bureau's definition of a non-complying employer. As stated, § 4123.75 applies if the employer fails to comply with the provisions of § 4123.35. Pursuant to § 4123.35, an employer like Farley that elected to self-insure was to be granted that privilege should the Commission find that employer to have sufficient financial ability to make direct payments. Ohio Rev.Code § 4123.35(B). The portion of § 4123.75 quoted above referred only to rights of employees to raise claims before the Com-

mission if the employer did not supply medical services.

As stated and stipulated by the parties, Farley was granted the privilege of self-insurance during all years in question. Therefore, it was not a non-complying employer as defined by § 4123.75.

Still, even if Farley were a non-complying employer for purposes of § 4123.75, it would nonetheless have no further liability under that section. Under § 4123.75, if Farley were a non-complying employer, the Commission could have instituted proceedings to recover from it any amount paid from the Surplus Fund. To secure the employer's payment of awards, Farley would then have had the option either to pay each award or furnish a bond "in such amount and with such sureties as the commission requires, to pay such employee such award in the manner and amount fixed thereby." Ohio Rev.Code § 4123.75. However, Farley has already furnished the requisite bond in the form of its payments to the Surety Bond Fund. There is no discernable difference in the Ohio Act between a bond in place prior to the Bureau instituting proceedings to recover on a claim or one posted subsequent to the Bureau's action. The statutory language, which during years in issue allowed a non-complying employer the option to furnish a bond, is further support for the proposition that a non-complying self-insurer is one who fails to provide a surety bond or make payment into the bond fund as opposed to a defaulting self-insurer who has a bond on file but fails to pay workers' compensation claims directly. A complying employer was one who had already provided a bond or paid the premiums, as Farley did. A non-complying employer was required either to pay the claim or provide a bond. Here, Farley had a form of bond in place consisting of its Surety Bond Fund contributions prior to the Bureau instituting any proceedings to recover the claims paid to Farley's former employees.

Logically, it makes no difference whether the premiums are paid into the fund before benefits and compensation are paid out (as might be the case with a contract involving a so-called "borrowed servant") or are reimbursed back into the fund once payment to an employee has been made, as with a surety. In either case, the money is paid into the fund by a person or entity having a contractual obligation to do so. *Holben*, 31 Ohio St.3d at 156, 509 N.E.2d at 941.

Farley and the Bureau have stipulated that, while payments were made to Farley's employees out of the Surplus Fund, the Surplus Fund has since been reimbursed by the Surety Bond Fund. As § 4123.35 applies only to actions to recover on behalf of the Surplus Fund, and the Surplus Fund had already been reimbursed, Farley argues that the provision would not apply to the Bureau's claim here. However, the Bureau has filed on behalf of any fund it administers and for which it is entitled to collect. Should Farley otherwise be liable, the prospect of reimbursement between funds could not defeat the Bureau claim.

### 3. *The Bureau's Fairness Argument is Unpersuasive*

The Bureau argues that it would be unfair to limit its right of recovery against defaulting self-insurers under the older version of Act as those employers who paid premiums into the State Insurance Fund paid significantly more each year into the state funds than employers who self-insure. The answer to that argument is not only that legislatures make up the rules of economic fairness rather than judges, but that the statutory scheme at the time also had a sensible origin. While it is true that employers who paid premiums did pay more each year into the state funds than self-insurers, the legislative reasoning behind initial disparity in cost between those two groups employers can be seen. Employers who paid premiums into the State Insurance Fund initially

paid considerably more than self-insured employers paid. However, premium paying employers had no further liability. Self-insured employers that contribute to the Surety Bond Fund initially paid significantly less than premium paying employers. However, after paying workers' compensation claims directly, they could end up paying much more in combined Surety Bond Fund contributions and workers' compensation payments than their premium paying counterparts. Thus, there was some rationale for differences in amounts employers paid in premiums to the State Insurance Fund and the amounts that self-insuring employers paid to the Surety Bond Fund.

The Bureau also argues that a ruling stating that the Bureau has no direct right of recovery against a defaulting self-insurer would permit all self-insurers to cease paying workers' compensation claims to their employees. However, this argument has little merit because the Bureau has a remedy. If a self-insured employer fails to make such direct payments to its injured employees, the Bureau can revoke the privilege of self-insurance. The self-insured employer would then be required to make premium payments to the State Insurance Fund in an amount considerably higher than its payments to the Surety Bond Fund. Furthermore, by the 1993 amendment, the Bureau obtained a new right of recovery.

On a final note, it must be said that much of the complexity here under the Ohio statutory scheme is caused by the State's failure to provide Farley and other self-insurers with an actual bond. Had such a bond been provided, the matter would have been simply resolved. Farley would have been covered to the extent of the bond it paid for. If the bonds were not exhausted, Farley could have no liability under the statute. Such is the case with bonds purchased during the period of 1982 through 1986 when Farley purchased its bonds through private surety companies.

The long and short of the matter is that the Ohio Act was a very complex law which formerly had a hole in it as to Bureau remedies, and the hole was not plugged until after the years in issue here had passed. As a result, the Bureau has no claim under § 4123.75.

### III. The Bureau Has No Common Law Suretyship Right to Reimbursement

■ The Bureau argues that, despite lack of language in the pre–1993 Act allowing it to recover against a defaulting employer, it has a common law right under suretyship law to recover against Farley.

"Suretyship" is a contractual relation whereby one person (the surety) agrees to answer for debt, default or miscarriage of another (the principal), with the surety generally being primarily and jointly liable with the principal. As in a contract of guaranty, suretyship is an undertaking to answer for the debt or default or miscarriage of another; however, in a contract of suretyship, the surety becomes bound as the principal is bound.

52 OH Jur.3d Guaranty and Suretyship § 5.

The Bureau cites to § 4123.351(B) which stated that the "commission's program shall in all practical respects function as a surety bond company." While this section authorized the Commission to function as a surety, it certainly did not provide or even suggest that the Commission had additional rights outside of those contained within the statute.

■ Under Ohio law, when a surety bond is required by statute, both the statute and language of the bond itself control terms of the bond. "It is a well established principle of law that a bond is to be construed as a contract between the parties and interpreted in accordance with its terms". *Troyer v. Horvath*, 13 Ohio App.3d 155, 157, 468 N.E.2d 351 (1983). Additionally, when a bond is required by statute, the statute and the terms of the

bond measure the surety's liability. *Royal Indem. Co. v. Day & Maddock Co.*, 114 Ohio St. 58, 150 N.E. 426 (1926); *Southern Surety Co. v. Bender*, 41 Ohio App. 541, 180 N.E. 198 (1931); *St. Paul Fire & Marine Ins. Co. v. Industrial Comm'n of Ohio*, 1986 WL 3468 (1986), *aff'd*, 30 Ohio St.3d 17, 506 N.E.2d 202 (1987). Here, the Commission issued no such bonds. Thus, its sole measure of possible recovery is contained within the Ohio Act.

Pursuant to § 4123.351(C), payment from a surety bond relieves an employer of liability to the extent of that payment. The Bureau argues that this section cannot apply as no bonds were issued by it. Just so. The State was required by statute to issue actual bonds and failed to comply with its own statute, yet expects to have the statute enforced so as to benefit from its own non-compliance.

The Bureau argues that no bond of a set face value was required to be issued. However, as quoted above, § 4123.351(A) specifically required the Commission to issue a bond "for a face amount sufficient to cover the estimated potential liability of that employer," something to be estimated by the state agency when ascertaining an employer's financial ability as part of the process of considering requests for self-insurer status. The Bureau argues that no bond was actually required because any amounts due in excess of the face value of the bond would be payable out of the Surplus Fund.

> For example, assume the Bureau was to issue a paper bond to an employer having a face value of $500,000. If the self-insuring employer defaults, the Bureau looks to the bond (surety fund) for payment of the first $500,000 in benefits. The surety then has recourse over the employer. Under this hypothetical, the bond would then "be exhausted", as the Court used that term at the June 2, 1998 hearing. That would not mean the rest of the employees claims go unpaid. The claims in excess of $500,000 would

be paid from the surplus fund with an unquestionable right of reimbursement under § 4123.75 because no bond is available. Between the two avenues of recovery, the state is made whole.

Bureau's Response at 33. The Bureau's circular argument falls short in the face of plain statutory language. Moreover, the problem with the Bureau's non-compliance with § 4123.351 is significant. Had the Bureau actually issued the required bond, the court would be in a position to look at the bond, determine whether it had been exhausted for each claim year, and determine whether Farley had any additional liability. Because of the Bureau's failure to comply with the statute, it cannot be determined that Farley's non-existent "bonds" have expired for the years in question, and it certainly cannot be assumed that the non-issued bonds have expired.

The Bureau uses the analysis in *Holben v. Interstate Motor Freight System*, 1985 WL 8201 (Ohio App. 6 Dist.1985), *aff'd*, 31 Ohio St.3d 152, 509 N.E.2d 938 (1987), to argue that it still has a common law right of reimbursement despite language of the Ohio Act. However, *Holben* did not state that interpretation of § 4123.519 (a section dealing with appeals which is not relevant to questions presented here) "must be considered in light of long-standing and well-established Ohio common law related to the principal/surety relationship." Bureau's Trial Memorandum at 19 (citing to *Holben*, 1985 WL 8201, \*2). The *Holben* opinion actually stated that legislative enactments involving the workers' compensation law do not exist in a vacuum but should be construed in conjunction with legislative intent and the purposes of the statutory enactments. *Holben*, 1985 WL 8201, \*2. In affirming *Holben*, the Ohio Supreme Court did discuss in dicta the common law of suretyship, not to expand on any statutory rights, but only in its reasoning that the statutory definition of "employer" under the Ohio Act includes a

surety. *Holben,* 31 Ohio St.3d at 156–57, 509 N.E.2d at 941–42.

The Bureau's strongest argument comes from one precedent. Bureau's Trial Memorandum at 22–23 (citing *United States v. Tilleraas,* 709 F.2d 1088 (6th Cir.1983)). In *Tilleraas,* the Sixth Circuit allowed an action by the United States to proceed against a defaulting student loan borrower. The main issue in that case was whether the government was barred by expiration of statutory limitations or could alternately recover as surety under a common law cause of action. The opinion held that a statute which grants one remedy to some party cannot be read to deny the availability of a common law remedy without express language to that effect. 709 F.2d at 1092. Thus, the government's case was allowed to proceed. The Sixth Circuit found that a common law principal/surety relationship existed, and determined that the remedy provided by federal statute could not limit the government's common law rights.

The Bureau is in a similar position as the government was in *Tilleraas.* However, as Farley persuasively points out, the Bureau does not have the same common law rights under Ohio law as enjoyed by the federal government. The Bureau was created by the Ohio Act to administer the workers' compensation program. It has no other rights or authority, common law or otherwise, and no authority to act upon any rights that are not expressly granted by the Act that created it. "The Industrial Commission is a creature of statute under constitutional authorization and its power and the extent thereof are defined by statute. . . ." 93 Oh. Jur.3d Workers' Compensation § 39 (1989). Like the Commission, the Bureau is also a statutory creation with specific defined functions.

The Commission is a statutorily created entity consisting of three members appointed by the governor. Ohio Rev.Code § 4121.02. It is responsible for establishing overall administrative policy and management of the commission itself, hearing workers' compensation appeals, and rulemaking where required. Ohio Rev.Code § 4121.03. The Bureau is also a statutorily created entity. Ohio Rev.Code § 4121.121. The Bureau has four main functions: prompt payment of compensation and benefits, in accordance with the statutes and rules of the Bureau and Commission, maintaining an ongoing program to identify employers subject to the Ohio Act, establishing workers' compensation coverage for employers under the state, and granting qualifying employers the privilege of self-insurance, and auditing and monitoring self-insurers to ensure compliance. Ohio Admin. Code § 4123–9–01(A). The Bureau's power is limited and ministerial. *See State ex rel. Crabtree v. Ohio Bureau of Workers' Comp.,* 71 Ohio St.3d 504, 507, 644 N.E.2d 361, 365 (1994). The Bureau's power gives way to the Commission when a party contests an award, necessitating a weighing of evidence and a judgment. *Id.*

The administrator of workers' compensation is appointed by the governor and is responsible for management of the Bureau and discharge of all administrative duties imposed on the administrator by statute. Ohio Rev.Code § 4121.121. The administrator reviews and processes all applications for claims, awards compensation on uncontested claims, makes payment on orders of the Commission, and serves as representative of the State Insurance Fund. Ohio Rev.Code § 4121.39. In addition, the administrator is required to "establish a legal section within the bureau to provide legal advice and assistance to the administrator and the administrator's staff as to claims procedure and policy; appeals to be lodged on behalf of the state insurance fund; and other legal issues. The bureau legal section shall act as attorney for the state fund in administrative appeals." *Id.* In general, the administrators' duties are administrative. There is some duplication of the authority and power of the commission granted to the administrator. *State ex rel. Michaels v. Morse,* 165

Ohio St. 599, 602, 138 N.E.2d 660, 663 (1956).

Under the Ohio Act as earlier discussed, the Bureau was given no statutory right of reimbursement on behalf of the Surety Bond Fund or the Self–Insuring Employer's Guaranty Fund until the 1993 statutory amendment became effective. It cannot exceed its statutory boundaries.

Moreover, the Ohio Act itself limits an employer's liability once the employer has a surety bond in place. As stated above, § 4123.351(C) provides that payment from the surety bond "relieves the employer of any liability for damages at common law...." Unlike the statute at issue in *Tilleraas,* the Ohio Act thereby specifically limits the Bureau's available remedies. As discussed above, the Commission was required to issue to Farley a surety bond with a specific face value. The Bureau would have had the right to recover from that bond. The Ohio Act did not, however, give the Bureau any additional right to recover until the 1993 amendment was enacted.

> Because any applicable statute becomes a part of the surety's undertaking, the surety is held to the obligation which attaches to the bond by virtue of the law in force at the time of the undertaking. A surety on a statutory bond, especially a compensated surety, cannot fail to comply with the provisions of the statute and then successfully urge that they do not apply to the bond.

52 OH Jur. Guaranty and Suretyship § 64.

Additional authority cited by the Bureau is not persuasive. In *In re Olga Coal Co.,* 194 B.R. 741 (Bankr.S.D.N.Y.1996), the state received tax priority status on a portion of its claim for reimbursement after a defaulting self-insurer's surety bonds were exhausted. However, the state in *Olga* claimed reimbursement under a state statute, not under the common law of suretyship. Moreover, the surety bond holders claim for reimbursement in that case arose out of a contractual obligation between the sureties and that debtor. *Olga,* 194 B.R. at 749. *Olga* is therefore distinguishable.

*In re Chateaugay Corp.,* 177 B.R. 176 (S.D.N.Y.1995), *aff'd,* 89 F.3d 942 (2d Cir. 1996), is also cited but likewise unpersuasive. In *Chateaugay,* the self-insured employer's sureties filed claims in bankruptcy seeking reimbursement for amounts paid out on a bond. The reported opinion did not discuss why the claim was allowed or which section of the New York State Worker's Compensation Act was relevant. The opinion spoke to whether the surety was entitled to priority as an administrative expense or as an excise tax and whether the surety's claims for reimbursement could be classified separately from the worker's compensation claims of the debtor's injured employees. Thus, it is not helpful here.

## IV. *Farley's Guarantee Does not Apply Where*
### *It Is Not Liable on Underlying Claim*

 The Bureau pleaded in its final amended claim that it has a right of direct recourse against Farley under the Unconditional and Continuing Guarantee executed by Farley in favor of the Bureau. While the Bureau attached a copy of the guarantee to its proof of claim, it made no argument at or following trial as to how that document could apply to the Bureau's claim.

While the Bureau's argument under the Guarantee was thereby waived, it should be observed that this document would not assist its case.

As stated, Farley, as an employer, is not liable under § 4123.75, nor is it liable under any common law right of reimbursement for worker's compensation claims paid on Farley's behalf. As a result, Farley, as guarantor, is not liable to pay the $2.6 million workers' compensation claim as that is not Farley's debt. The "Unconditional and Continuing Guarantee" by Farley on behalf of Farley Metals provided:

For One Dollar and other valuable consideration, receipt of which is hereby acknowledged, and to encourage the Industrial Commission of Ohio (hereinafter called "Commission"): to extend self-insuring status to the Farley Metals, Inc. a subsidiary of Farley Inc. (hereinafter called "Guarantor"), undersigned Guarantor absolutely and unconditionally guarantees the prompt and punctual payment, when due, by acceleration or otherwise, *of each obligation direct or indirect, now existing or hereafter created or acquired with respect to payments owed by the subsidiary under the workers' compensation laws of Ohio, together with all interest, charges, and penalties accruing thereon.*

September 22, 1989 Guarantee at 1.

■ As discussed above, Farley has no obligation under Ohio's workers' compensation laws. As a result, the guarantee has never been triggered. Under Ohio law, "there can be no liability upon the part of a guarantor if there is no valid obligation against the principal debtor." *Banana Sales Corp. v. Chuchanis,* 119 Ohio St. 75, 79, 162 N.E. 274, 276 (1928).

### CONCLUSION

Accordingly, by separate order, judgment will be entered in favor of Farley. Claim No. 509 of the Ohio Bureau of Workers' Compensation as amended will be entirely disallowed.