HOLBEN, APPELLANT, v. INTERSTATE MOTOR FREIGHT SYSTEM; INS. CO. OF N. AMERICA, SURETY, APPELLEE; MAYFIELD, ADMR., APPELLANT.*

MCCONNELL, APPELLANT, v. INTERSTATE MOTOR FREIGHT SYSTEM; INS. CO. OF N. AMERICA, SURETY, APPELLEE; MAYFIELD, ADMR., APPELLANT.

CURRY, APPELLANT, v. INTERSTATE MOTOR FREIGHT SYSTEM; INS. CO. OF N. AMERICA, SURETY, APPELLEE; MAYFIELD, ADMR., APPELLANT.

[Cite as Holben v. Interstate Motor Freight System (1987), 31 Ohio St. 3d 152.]

(Nos. 85-1937 and 85-1938—Decided July 1, 1987.)

---

* Case Nos. 86-587, 86-1212 and 86-1531 previously consolidated with these appeals are decided today by separate entries. See *infra.*

*Gallon, Kalniz & Iorio Co., L.P.A., William E. Takacs* and *James A. Whittaker,* for appellants Holben, McConnell and Curry.

*Bugbee & Conkle, Gregory B. Denny* and *Robert L. Solt III,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson, Michael L. Squillace, Charles E. Bloom* and *Roger E. Weiher,* for appellant Mayfield, Admr.

HERBERT R. BROWN, J. The issue before us is whether a surety for an insolvent self-insured employer is included within the definition of "employer" in R.C. 4123.01(B), for the limited purpose of appealing an adverse decision of the Industrial Commission or a regional board of review to the court of common pleas pursuant to R.C. 4123.519. We answer in the affirmative.

R.C. 4123.519 provides in part:

"The *claimant or the employer* may appeal a decision of the industrial commission or of its staff hearing officer made pursuant to division (B)(6) of section 4121.35 of the Revised Code in any injury or occupational disease case, other than a decision as to the extent of disability, to the court of common pleas of the county in which the injury was inflicted or in which the contract of employment was made if the injury occurred outside the state, or in which the contract of employment was made if the exposure occurred outside the state. * * * Like appeal may be taken from a decision of a regional board from which the commission or its staff hearing officer has refused to permit an appeal to the commission." (Emphasis added.)

The term "employer" is defined in R.C. 4123.01(B), which provides, in part:

" 'Employer' means:

"* * *

"(2) Every person, firm, and private corporation, including any public service corporation, that (a) has in service one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or writ-

ten, or (b) *is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by Chapter 4123. of the Revised Code."* (Emphasis added.)

This court has held that the procurement of a surety bond by a self-insuring employer is tantamount to a contribution to the State Insurance Fund. In *Reinholz* v. *Indus. Comm.* (1917), 96 Ohio St. 457, 119 N.E. 129, this court explained:

"The fund with which the Industrial Commission deals is provided for by Section 22 of the * * * [Workers' Compensation Act]. There are three sources provided in the act from which moneys to satisfy claimants are available:

"* * *

"*Third.* The bond executed by the self-insuring employer, payable to the state for the benefit of injured and killed employees, *which in legal effect is a contribution to the general insurance fund.*

"The general assembly invested the Industrial Commission with full discretion in the matter of allowing employers to carry their own insurance. The privilege was safeguarded, hedged about, and restricted. The amount of the bond, the financial responsibility of the applicant, the sufficiency of the surety, were all to be determined by the commission. The failure to observe any of the valid orders of the board on the part of the employer would work almost automatically to remove from the employer the privilege of self-compensation.

"*In the eyes of the law, this bond was substantially the same as cash; and, in theory, at least, constituted a part of the fund available for payment of compensation.* And as a matter of general knowledge it has so worked out in practice; fully justifying the theory of the law." (Emphasis added.) *Id.* at 462-464, 119 N.E. at 131.

The reasoning of *Reinholz* is as sound today as it was in 1917. First, under R.C. 4123.35, an employer may seek permission from the Industrial Commission to self-insure against the risk of workers being injured or killed in the course of their employment. If the commission finds that the employer is "of sufficient financial ability to render certain the payment of compensation to injured employees or the dependents of killed employees, and the furnishing of medical, surgical, nursing, and hospital attention and services and medicines, and funeral expenses * * *" (R.C. 4123.35[B]), it may grant the employer the privilege to pay compensation individually and to furnish such services and expenses directly.

Second, prior to August 22, 1986,[2] R.C. 4123.35 provided:

"* * * The commission may require such security or bond from said employers and publicly owned utilities as it deems proper, adequate, and

---

[2] Effective August 22, 1986, the General Assembly amended R.C. 4123.35 and enacted R.C. 4123.351, to the effect that a self-insured employer must now obtain its surety bond from the Industrial Commission itself, rather than from a private surety company.

sufficient to compel, or secure to such injured employees, or to the dependents of such employees as may be killed, the payment of such compensation and expenses, which shall in no event be less than that paid or furnished out of the state insurance fund in similar cases to injured employees or to dependents of killed employees whose employers contribute to said fund * * *."

Finally, if the Industrial Commission finds that a self-insured employer is in non-compliance with the law because it has failed to make payments to an injured employee who is entitled to benefits, in violation of an order by the commission to do so, the commission shall order payment to the employee from the statutory surplus fund and shall seek reimbursement for such payments from the non-complying employer *and/or its surety.* See R.C. 4123.75 and *In re Mansfield Tire & Rubber Co.* (C.A. 6, 1981), 660 F. 2d 1108, 1115 ("the surety stands as a codebtor with the 'self-insured' employer to the claim of [the] Industrial Commission for the amount of benefits provided to the employee from the State Insurance Fund").

Therefore, we reaffirm the *Reinholz* determination that a surety bond obtained by a self-insured employer pursuant to R.C. 4123.35 is the legal equivalent of a contribution to the State Insurance Fund, as the bond provides a financial source from which benefits and compensation may ultimately be paid.

It follows that because a surety is liable on its bond to reimburse the statutory surplus fund for payments made from that fund due to the employer's non-compliance, the surety is, under R.C. 4123.01(B)(2)(b), "bound by any such contract of hire *or by any other written contract,* to pay into the insurance fund the premiums provided by Chapter 4123. of the Revised Code." (Emphasis added.) Logically, it makes no difference whether the premiums are paid into the fund before benefits and compensation are paid out (as might be the case with a contract involving a so-called "borrowed servant") or are reimbursed back into the fund once payment to an employee has been made, as with a surety. In either case, the money is paid into the fund by a person or entity having a contractual obligation to do so. Therefore, in either case, under R.C. 4123.01(B)(2)(b), the money has been paid into the fund by an "employer."

Our task is one of discerning legislative intent; therefore, we must examine the statutory scheme as a whole as well as the specific code sections immediately at issue. It is indisputable that workers' compensation statutes contemplate a series of *adversarial* proceedings to determine the validity of disputed claims. See R.C. 4123.515 through 4123.519. We detect no evidence of an intent on the part of the General Assembly to allow the insolvency of an employer to frustrate the adversarial nature of those proceedings.

Moreover, it has long been the common law that a surety can assert the defenses of its principal. As this court held in *State, ex rel. Commrs.,* v.

*Blake* (1853), 2 Ohio St. 147, 150: "Whatever, therefore, amounts to a good defense to the original liability of the principal, is a good defense for the sureties when sued upon the collateral undertaking." See, also, *State* v. *Kuhner & King* (1923), 107 Ohio St. 406, 421, 140 N.E. 344, 348; *Mut. Finance Co.* v. *Politzer* (1970), 21 Ohio St. 2d 177, 183-184, 50 O.O. 2d 397, 401, 256 N.E. 2d 606, 611.

Common sense indicates that the General Assembly, well aware of this basic common law, would not have intended that a surety, although possessing the defenses of the employer, must wait until sued by the Industrial Commission for reimbursement in order to assert them. This dubious proposition would require two series of proceedings—the first involving the claimant *ex parte,* and the second involving the commission and the surety—each involving identical issues. Worse, in neither proceeding would both of the adversarial parties be present at the same time to argue these issues. We can find no indication in the workers' compensation statutes that the General Assembly intended such an inefficient and duplicative scenario.

Therefore, we hold that a surety for an insolvent self-insured employer, which bears the financial responsibility for benefit payments from the statutory surplus fund, is included within the definition of "employer" in R.C. 4123.01(B) for the limited purpose of participating in the workers' compensation benefit determination proceedings, and therefore may appeal a decision of the Industrial Commission or a regional board of review to the court of common pleas, pursuant to R.C. 4123.519.[3]

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES and WRIGHT, JJ., concur.

LOCHER and DOUGLAS, JJ., dissent.

LOCHER, J., dissenting. I respectfully dissent because today's decision amounts to pure judicial legislation.

R.C. 4123.01(B)(2) defines an "employer" as:

"Every person, firm, and private corporation, including any public service corporation, that (a) has in service one or more workmen or

---

[3] Appellants' arguments utilizing R.C. 4123.82 (B) are misplaced. Although subsection (B) provides in part that "* * * no insurance corporation shall, directly or indirectly, represent an employer in the settlement, adjudication, determination, allowance, or payment of claims," a reading of the entire subsection indicates that such language refers only to an insurance company which has undertaken to indemnify a self-insured employer against its loss in excess of $50,000 due to one disaster or event. In the case *sub judice,* INA is a *surety* rather than an *indemnitor;* therefore, R.C. 4123.82 has no application.

operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (b) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by Chapter 4123. of the Revised Code.

"All *such employers* are subject to Chapter 4123. of the Revised Code. * * *" (Emphasis added.)

On its face, the statutory definition of "employer" clearly does not include the surety of a self-insured employer. However, the majority expands the legislature's definition by relying upon *Reinholz* v. *Indus. Comm.* (1917), 96 Ohio St. 457, 119 N.E. 129. This reliance is misplaced. The *Reinholz* court held that the surety bond of a self-insured employer is a contribution to the general workers' compensation insurance fund. This holding enabled the employee of a self-insured employer to appeal the determination of the commission to the court of common pleas. The focus of the *Reinholz* holding was on the employee and the fact that the posting of a surety bond by its self-insured employer was a contribution into the general fund by the *employer, not the surety*. The majority utilizes the language of *Reinholz* to arrive at its desired result without reviewing *Reinholz* as a whole.

Furthermore, R.C. 4123.01(B)(2)(b) states that "[a]ll *such* employers are subject to Chapter 4123. of the Revised Code." (Emphasis added.) Accordingly, R.C. Chapter 4123 places various responsibilities upon "employers." Many of these responsibilities involve the performance of tasks that a surety does not perform. The majority opinion ignores the statutory language, declares sureties to be employers for limited purposes and casually permits sureties to reap the benefits that appeal rights might bring, without requiring the surety to fulfill the responsibilities of being a Chapter 4123 "employer."

Additionally, in the name of maintaining adversarial proceedings, the majority disregards the fact that the duties and responsibilities of the administrator of the bureau can provide adequate protection to the surety's interest during the administrative proceeding before the commission.[4] This court has also fully recognized the commission's statutory duty to protect the integrity of the State Insurance Fund. *State, ex rel. Weimer,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 159, 16 O.O. 3d 174, 404 N.E. 2d 149. The bureau and commission will not allow employees of bankrupt employers to run rampant through the system.

Finally, the sureties do have rights to challenge the claims. "Whatever * * * amounts to a good defense to the original liability of the principal, is a good defense for the sureties *when sued upon the collateral*

---

[4] Under R.C. 4123.512, the administrator has the authority to assign the investigation of all claims. The administrator is also permitted to file administrative appeals under R.C. 4123.516 and be heard at the administrative appeal proceeding under R.C. 4123.518.

*undertaking."* (Emphasis added.) *State, ex rel. Commrs.,* v. *Blake* (1853), 2 Ohio St. 147, 150. Thus, when the commission seeks reimbursement from the surety for payments made to the claimants from the surplus fund, the surety can assert the rights and defenses of the bankrupt employer. While I admire the majority's resolve to inject efficiency into the process, I do not believe that it is within the province of this court to rewrite the statute in the name of interpretation. "[I]t must be recognized that a court, in interpreting a legislative enactment, may not simply rewrite it on the basis that it is thereby improving the law." *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, 71, 55 O.O. 2d 120, 126, 269 N.E. 2d 121, 128. "[A] statute which is free from ambiguity is not subject to judicial modification under the guise of interpretation." *Pulley* v. *Malek* (1986), 25 Ohio St. 3d 95, 96-97, 25 OBR 145, 147, 495 N.E. 2d 402, 404.

The statutory definition of "employer" under R.C. 4123.01(B)(2) is clear and does not include a surety of a self-insured employer. It is within the power of the General Assembly to include a surety within that definition if it desires to do so. I cannot agree with the decision of this court to usurp the power of the General Assembly.

Accordingly, I respectfully dissent.

DOUGLAS, J., concurs in the foregoing dissenting opinion.