In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1976

In the Matter of:
Farley Inc., doing business as
Tool & Engineering and Magnus Metals,

Debtor.


Appeal of:

Ohio Bureau of Workers' Compensation



Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4789 (91 B 1560)--Charles R. Norgle, Sr., Judge.


Argued November 27, 2000--Decided December 29, 2000




  Before Bauer, Posner, and Easterbrook, Circuit Judges.

  Easterbrook, Circuit Judge.  Like most states,
Ohio requires employers to insure their workers'
compensation obligations. Ohio permits well-
heeled firms to dispense with insurance if they
post surety bonds. Bonds are less costly than
insurance because the surety has a right of
subrogation against the employer in the event the
surety is called on to pay. In 1986 Ohio entered
the bonding business, requiring self-insuring
employers to obtain surety bonds from the state.
Ohio Rev. Code sec.4123.351(B). Between October
1987 and July 1990 Farley Inc. paid Ohio to stand
behind benefits for workers at the firm's
Doehler-Jarvis plant, which Farley sold in the
latter month. For almost a year Farley continued
to remit benefits for injuries that had occurred
while it was the plant's operator, but in May
1991 it ceased, asserting insolvency. The Ohio
Bureau of Workers' Compensation, as Farley's
surety, met its responsibility by paying on
Farley's behalf. The Bureau then filed a
subrogation claim in Farley's bankruptcy. After
needlessly protracted proceedings, Bankruptcy
Judge Schmetterer denied the Bureau's claim,
ruling that Farley fulfilled all of its
obligations by paying the annual premiums for the
bond. 237 B.R. 702 (Bankr. N.D. Ill. 1999). The
district court affirmed in an unpublished

opinion, and now the dispute is in our bailiwick.

Farley never paid more than $50,000 annually for surety bonds that guaranteed a workers' compensation bill that exceeded $1 million each year. This sum looks like a bonding premium rather than an insurance premium. Yet both the bankruptcy court and the district court held that Farley had acquired insurance--at least, insurance that took effect on its insolvency--and therefore did not have an obligation to reimburse the Bureau for sums paid to injured employees on its behalf. Both courts held, in other words, that Ohio made a gift to Farley's other creditors in bankruptcy (perhaps to its shareholders, if a surplus remains after all debts have been paid) by assuming all responsibility for its workers' compensation rolls. The cornerstone of that conclusion in both courts was their observation that until 1993, when the state enacted Ohio Rev. Code sec.4123.351(G), no provision in state law expressly established the Bureau's right to subrogation when it made payments on the bond. Nor did the bond itself establish such a right, for the "bond" was a statutory construct, a legal obligation of both employer and bureau without existence as a separate piece of paper containing detailed terms. We bypass the question whether Ohio law before 1993 gave the Bureau a right to recover on the theory that by failing to make payments to employees, and thus activating the Bureau's obligation to pay as surety, Farley became liable under Ohio Rev. Code sec.4123.75 because it "failed to comply" with Ohio Rev. Code sec.4123.35. An opinion by the Supreme Court of Ohio says that failure to pay employees is "failure to comply." Holben v. Interstate Motor Freight System, 31 Ohio St. 3d 152, 156, 509 N.E.2d 938, 941 (1987). But Ohio follows its unique Syllabus Rule, Ohio St. Rep. R. 1, which limits holdings to the syllabus preceding the opinion, and this statement, which does not appear in the syllabus, therefore is not authoritative. "Failure to comply" with the workers' compensation laws in Ohio has far-reaching consequences, including restoration of all employees' rights under the common law of torts. Thus the Bureau's argument under sec.4123.75 amounts to a contention that bankrupt employers fall out of the strict-liability system, and their employees can initiate tort litigation. There is a better route to decision in this case, a solution with fewer side effects.

Farley treats a surety bond as the equivalent of bankruptcy insurance because it assumes that a surety, like an insurer, owes its obligation to the employer, and that, when the surety pays, the employer's debt to its employees has been satisfied. End of transaction. That is how

insurance works, but it is not how suretyship works. A surety undertakes an obligation to third parties, promising to step in if the principal obligor defaults. But a surety does not take the principal's obligation for its own; it pays on the principal's behalf. Like a bank that has issued a letter of credit (or pays on a check), the issuer of a surety bond is entitled to recover from the principal the amount it has laid out. See Restatement (3d) Suretyship & Guaranty sec.sec. 22, 24 (1995); Kerr v. Personal Service Insurance Co., 335 N.E.2d 741, 743 (Ohio App. 1975). The premium for the bond (or for a letter of credit) covers the costs of carrying out this obligation and the risk that the surety will be unable to recover because the principal has insufficient assets; the premium does not compensate the surety for forswearing recovery from the principal even when assets are available (as they are in Farley's case). If "surety bond" has its normal meaning, then, the Bureau must be recognized as one of Farley's creditors, to the extent the Bureau made payments on Farley's behalf.

Ohio used a phrase--"surety bond"--with an established legal meaning. A legislature that chooses language with time-tested effects does not have to narrate those effects in order to achieve them; a statute is not a legal encyclopedia and need not ape one in order to specify the normal consequences of ordinary legal words and phrases. See Phoenix Containers, L.P. v. Sokoloff, No. 00-1466 (7th Cir. Dec. 18, 2000), slip op. 4. All language depends for meaning on its context, and one vital context is the way those persons affected by legislation, the law's addressees, understand the statutory words. Legally trained readers of the phrase "surety bond" know that a surety has a right of subrogation. A legislature may of course use language idiosyncratically; words are options rather than prisons. If Ohio had made it clear that the phrase "surety bond" has an unusual meaning, its special meaning would be respected, but nothing in Ohio law says that the issuer of a "surety bond" for workers' compensation payments lacks the normal right to recover from the principal.

Nonetheless, Farley insists, state law has wiped out subrogation indirectly, through Ohio Rev. Code sec.4123.351(C) (1989 ed., before the 1993 amendments):

If a self-insuring employer defaults, the bureau shall recover payments of compensation or benefits from the self-insuring employer's surety bond. Payment from the bond relieves the employer of any liability for damages at common law or by statute

that arises out of the injury or occupational disease that forms the basis of the workers' compensation claim to the extent of the payment, except in bankruptcy proceedings.

Farley reads this language to mean that when the Bureau pays from the bond fund, the employer is relieved of "any liability"; and as liability in subrogation to the Bureau is included in "any liability," then the surety can't recover. This is not, however, what the statute says. When the surety pays the employees, the employer is relieved of "any liability for damages at common law"--which means that the employer is not exposed to tort damages even if its failure to pay was "failure to comply" with the workers' compensation statute. The employer also is relieved of statutory liability for "the injury or occupational disease"--which means that the employer need not pay its workers a second time, for they have already been compensated by the surety. Nothing in former sec.4123.351(C) says or implies that the employer need not reimburse the Bureau as surety; its rights stem from making payment on the employer's behalf, rather than from an "injury or occupational disease". To the extent the statute has any bearing at all on this subject, the exception for bankruptcy proceedings suggests that the Bureau can invoke the normal entitlements of a surety.

The 1993 amendments expressly authorize subrogation actions by the Bureau as surety. Farley tells us that these amendments show that until 1993 the law did not authorize subrogation. That's not the right question; we need to know whether until 1993 Ohio forbade subrogation (for otherwise the established meaning of "surety bond" furnishes all the required authority). Amending a law to authorize something in 1993 does not retroactively change the meaning of prior law. Legislatures often amend statutes to avoid misinterpretations, or just to avoid controversies such as the one between Farley and the Bureau that now has consumed almost a decade of litigation yet would be resolved in a flash under the 1993 statute. What Ohio enacted in 1993 does not affect the meaning of Ohio's pre-1993 statutes. See Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994). The law on the books when the Bureau acted as Farley's surety and sought reimbursement did not annul the right of subrogation that the phrase "surety bond" implies. The Bureau therefore is entitled to recover from Farley's estate in bankruptcy.

Reversed and Remanded