[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Electronic Classroom of Tomorrow v. State Bd. of Edn.*, Slip Opinion No. 2021-Ohio-3445.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3445

ELECTRONIC CLASSROOM OF TOMORROW, APPELLANT, *v.* OHIO STATE BOARD OF EDUCATION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Electronic Classroom of Tomorrow v. State Bd. of Edn.*, Slip Opinion No. 2021-Ohio-3445.]**

*Education—Community schools—Ohio State Board of Education's final determination that a community school must repay money in excess funding may not be appealed under R.C. Chapter 119—Court of appeals' judgment affirmed.*

(No. 2020-0182—Submitted March 2, 2021—Decided October 5, 2021.)

APPEAL from the Court of Appeals for Franklin County,

No. 17AP-767, 2019-Ohio-1540.

_____

**DEWINE, J.**

{¶ 1} When a charter school is found to owe money to the state of Ohio based on a review of the school's enrollment data, a statute allows the charter school

to appeal that decision to the Ohio State Board of Education for an informal hearing on the matter. R.C. 3314.08(K)(2)(b). The same statute provides that "[a]ny decision made by the board [on such an appeal] is final." R.C. 3314.08(K)(2)(d). The question for this case is whether a party may appeal this "final" decision.

{¶ 2} We hold that there is no right to appeal such a decision. R.C. 3314.08 uses "final" in the ordinary sense of the word, indicating that the matter is at an end. We thus affirm the court of appeals' judgment dismissing the case.

## I. Background

{¶ 3} Before closing its doors in 2018, the Electronic Classroom of Tomorrow ("ECOT") was Ohio's largest charter school.[1] *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 2. It was the state's first online charter school and, like other public schools, relied on state funding. *Id.*

### A. The Ohio Department of Education determines that ECOT owes some $60 million to the state

{¶ 4} In 2016, the Ohio Department of Education conducted a review of student enrollment at ECOT and determined that the state had overpaid the charter school approximately $60 million. This finding was premised on the department of education's determination that ECOT was required to provide its students with five hours of learning opportunities per day, and an examination of log-in and log-out data which revealed that, on average, students remained online for one hour a day.

{¶ 5} The review of ECOT's enrollment data was conducted pursuant to the department of education's authority under R.C. 3314.08(K) ("the enrollment-

---

1. In common parlance, a school like ECOT is typically referred to as a "charter school." The Revised Code uses the term "community school." R.C. 3314.01(B). This opinion uses the terms interchangeably.

review statute"). That statute enables the department of education to perform an initial review of a charter school's enrollment to make sure the school received the right amount of funding. R.C. 3314.08(K)(3). If the department of education determines that a community school owes money to the state, then the school may appeal that determination to the state board. R.C. 3314.08(K)(2)(a). On appeal, the state board "shall conduct an informal hearing on the matter" and "shall issue a decision" following the hearing. R.C. 3314.08(K)(2)(b). The state board's decision is "final." R.C. 3314.08(K)(2)(d).

### B. ECOT seeks to challenge the state board's decision

{¶ 6} After the department of education made its determination that ECOT received too much funding and needed to repay the state, ECOT exercised its right to appeal to the state board. The state board considered the appeal and issued a decision largely confirming the department of education's determination and ordering a return of $60,350,791.

{¶ 7} ECOT proceeded to simultaneously institute two different actions in an attempt to challenge the state board's "final" determination. It filed at the Franklin County Court of Common Pleas an administrative appeal of the state board's determination, arguing that the enrollment-review statute's reference to "final" meant the determination was appealable. (This matter is the subject of the present appeal.) And it filed an original action seeking writs of mandamus and prohibition in this court, under the alternative theory that an extraordinary writ was available because the enrollment-review statute did not provide a right to appeal the state board's "final" decision. The state board moved to dismiss the original action. It argued that an extraordinary writ was improper because ECOT had an adequate remedy at law by way of the administrative appeal, and that, setting aside the adequate-remedy issue, ECOT failed to allege any claims justifying relief. We granted the state board's motion and dismissed the original action without

specifying our rationale.[2] *State ex rel. Electronic Classroom of Tomorrow v. State Bd. of Edn.*, 150 Ohio St.3d 1426, 2017-Ohio-7567, 81 N.E.3d 1268.

{¶ 8} As for ECOT's administrative appeal, the common pleas court granted a motion to dismiss, concluding that it lacked jurisdiction to entertain the appeal because the enrollment-review statute denominated the state board's determination as "final." The Tenth District Court of Appeals initially reversed but, on reconsideration, affirmed the trial court's decision. It turned both to its own precedent, which had understood "final" agency decisions to be nonappealable, and to our decision in *Brookwood Presbyterian Church v. Ohio Dept. of Edn.*, 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256, where we said an agency's "final" decision under a different statute was appealable only because another provision of that same statute specifically granted a right to appeal.

{¶ 9} ECOT has now appealed the court of appeals' judgment affirming the trial court's dismissal order. We must determine whether the enrollment-review statute allows ECOT to appeal the state board's "final" determination.

## II. Under a plain reading of the enrollment-review statute, the final decision of the state board is not subject to appeal

{¶ 10} Not all orders issued by administrative agencies—even ones that are denoted as final—are subject to appeal. Our Constitution provides that the courts of appeals shall have "such jurisdiction as may be provided by law" to review administrative decisions. Ohio Constitution, Article IV, Section 3(B)(2). And while R.C. 2505.03(A) grants appellate jurisdiction for "[e]very final order * * * of a court," it grants appellate jurisdiction over "the final order of any administrative * * * agency" only "when provided by law." Thus, the question in this case is

---

2. Although we did not specify our rationale for granting the motion to dismiss, it is clear after our decision today that a party who seeks to challenge a decision of the state board in a 3314.08(K)(2)(b) proceeding by way of an extraordinary writ will satisfy the lack-of-an-adequate-remedy-at-law requirement.

whether there is a statutory grant of jurisdiction that would allow ECOT to appeal the finding of the state board.

{¶ 11} R.C. 119.12(B) is Ohio's general provision spelling out the right to appeal an agency adjudication. This statute tells us that "[a]ny party adversely affected by any order of an agency * * * may appeal to the court of common pleas of Franklin county." R.C. 3301.13—the general provision establishing the department of education and the state board—provides that in the exercise of its powers, the department of education—and by extension the state board, *see* R.C. 3301.01—shall be subject to R.C. Chapter 119. However, a more specific provision that limits a party's ability to appeal trumps these general provisions.

{¶ 12} The enrollment-review statute establishes procedures for the department of education to issue findings for the recovery of excess funding based upon a review of a community school's enrollment data and for a community school to challenge those findings by appealing to the state board. There is no question that the enrollment-review statute is a more specific statute than R.C. 119.12(B) as to the matter at issue. So we must determine whether a fair reading of the enrollment-review statute precludes ECOT from appealing the state board's final determination.

{¶ 13} Our analysis starts with the enrollment-review statute, and specifically what it means when it says that the state board's determination following an informal hearing is "final." ECOT argues that the word "final" should be understood as a legal term of art, meaning that the state board's decision is subject to an appeal. The state board disagrees; it says "final" should be understood in the everyday sense of the word, marking the end of the road thus rendering the state board's decision nonappealable. We share the state board's view.

{¶ 14} The ordinary meaning of "final," of course, is something that is "not to be altered or undone." *Webster's Third New International Dictionary* 851 (1986). A parent ends the discussion with his child upon saying, "I've made my

decision and my decision is final." A contestant on *Who Wants to be a Millionaire* locks in her answer choice only upon affirming that it's her "final answer." Likely, you're out of luck if you intend to return an item to a store that posted a sign saying: "All sales are final."

{¶ 15} ECOT's argument is premised on the fact that sometimes in the legal context, labeling something as "final" also imparts an additional meaning to the word. Sometimes we use "final" as a legal term of art to indicate the point at which proceedings before one court are complete, and the matter may be appealed to a higher court. In Ohio, a "final order" is one that may be appealed to a higher court. *See* R.C. 2505.02. And in the federal system, a "final judgment" is one that may be appealed. *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 106, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009); *see also* 28 U.S.C. 1291 (granting the courts of appeals jurisdiction over appeals from "all final decisions of the district courts"). In this vein, *Black's Law Dictionary* defines "final" *when used to refer to "a judgment at law"* as "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded. * * * Once an order, judgment, or decree is final, it may be appealed on the merits." (Emphasis added.) *Black's Law Dictionary* 773 (11th Ed.2019).

{¶ 16} In determining the meaning of "final" within the enrollment-review statute, we look first to the plain language of the statute, read in context. The statute creates a two-step review of the public funding a community school has received, first by the department of education and then by the state board on appeal. Step one involves the department of education's initial review. R.C. 3314.08(K)(1). If the department of education determines a community school received too much funding, the "community school may appeal the department's determination to the state board of education or its designee." R.C. 3314.08(K)(2)(a).

{¶ 17} An appeal of the department of education's determination leads to the second step: the state board's determination of the appeal following an informal

6

hearing on the matter. R.C. 3314.08(K)(2)(b) and (c). Unlike the department of education's initial finding, the state board's determination in the second step is not designated as appealable. R.C. 3314.08(K)(2)(d). Instead, we are told, "[a]ny decision made by the [state] board under [the enrollment-review statute] is final." *Id*.

{¶ 18} By explicitly designating the department of education's initial decision as appealable but not the state board's final decision as such, it is evident that the General Assembly meant only for the department's initial decision to be subject to an appeal. Why would the General Assembly hide the ball about the supposed appealability of the state board's decision after plainly stating in R.C. 3314.08(K)(2)(a) that the department of education's decision is appealable? Sticking with the everyday meaning of "final" offers a far less puzzling result.

{¶ 19} This reading is reinforced when one contrasts the way "final" is used in the enrollment-review statute with the way it is typically used when meant as a legal term of art. When "final" is used to specify the point in time in which an order may be appealed to a higher court, it is a modifying word. Thus, legal texts speak of "final order[s]," *see* R.C. 2505.02, "final decisions," *see* 28 U.S.C. 1291, and "final judgment[s]," *Mohawk Industries*, 558 U.S. at 106, 130 S.Ct. 599, 175 L.Ed.2d 458. Here though, the enrollment-review statute doesn't say that the state board's decision is a "final order" or "final decision"; it simply says that the board's order is "final." Thus, a fair reading of the enrollment-review statute leads to the conclusion that the General Assembly did not use "final" as a legal term of art to indicate that the state board's decision under R.C. 3314.08(K)(2)(b) or (c) is appealable, but rather in the ordinary sense of the word.

{¶ 20} ECOT insists that had the state legislature meant to foreclose appellate review of the state board's decision, it would have used language like "final and not appealable." In support, it points to other parts of the Revised Code where such language has been employed. *See, e.g.*, R.C. 3311.0510(A) ("The

superintendent's order is final and is not appealable"); R.C. 3316.03(E) ("A determination by the auditor of state * * * is final and conclusive and not appealable"); R.C. 3318.051(E) ("Any decision by the commission * * * is final and not subject to appeal"). But this argument is easily defeated when one considers that the legislature has also sometimes labeled orders as "final and subject to appeal." *See, e.g.*, R.C. 3769.0810(I) (a decision by the state racing commission to impose certain assessments is "final" and subject to appeal under R.C. 119.12); R.C. 3905.14(G) (a decision by the superintendent of insurance to issue a cease-and-desist order is a "final order [that] may be appealed"); R.C. 3905.50(F) ("All final orders and decisions of the superintendent [of insurance] are subject to judicial review as provided in Chapter 119. of the Revised Code"); R.C. 4731.23(E) (a decision by the state medical board is "final * * * except that the license or certificate holder may appeal in the manner provided by Chapter 119. of the Revised Code"); *see also Brookwood*, 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256, at ¶ 24 (Brown, C.J., dissenting) (citing other examples). So the enrollment-review statute's standalone reference to "final" in no way necessitates ECOT's reading.

### III. Caselaw supports our plain reading of the enrollment-review statute

{¶ 21} If there is any doubt that this plain reading is the correct interpretation of "final" in the enrollment-review statute, it is removed when one looks to our caselaw. We start with *Brookwood*. That case also concerned the meaning of "final," though in a different statute about applying to be a sponsor of a community school. *See* R.C. 3314.015. Only certain entities may qualify as sponsors, like tax-exempt, "education-oriented" entities. R.C. 3314.02(C)(1)(f). Brookwood Presbyterian Church applied for sponsorship status, but the department of education rejected Brookwood's application because it determined that the church was not "education-oriented." *Brookwood* at ¶ 2. Former R.C. 3314.015(B)(3)—relisted now as R.C. 3314.015(B)(4)—denoted the state board's

finding as to an entity's "education-oriented" status as "final." However, R.C. 3314.015(D) states that "[t]he decision of the department to disapprove an entity for sponsorship of a community school * * * may be appealed by the entity in accordance with section 119.12 of the Revised Code."

{¶ 22} We said in *Brookwood* that the "crux of this case is the interplay between [former] R.C. 3314.015(B)(3) and 3314.015(D)." *Brookwood* at ¶ 9. And we ultimately concluded that the state board's "final" decision under former R.C. 3314.015(B)(3) was appealable under R.C. 3314.015(D). *Id*. at ¶ 18, 20. Importantly, we did so because the statute itself (R.C. 3314.015) contained "a specific, statutory grant of jurisdiction" explicitly allowing for appeals from a decision disapproving an entity for sponsorship of a community school. *Id*. at ¶ 15. For the *Brookwood* majority, "that ma[de] all the difference." *Id*.

{¶ 23} Thus, the key to *Brookwood*, 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256, was the existence of a specific statutory provision allowing for the appeal of the department of education's decision disapproving an entity for sponsorship. In our case, there is no parallel provision saying that a state board decision ordering repayment of funds can be appealed. So if we follow *Brookwood*, it is clear that there is no right to appeal the state board's decision.

{¶ 24} In arguing that the state board's decision is appealable, both ECOT and the dissent rely heavily on the interplay between the general provision in R.C. 119.12(B), which allows for administrative appeals, and the provision in R.C. 3301.13, which provides that the department of education is subject to R.C. Chapter 119. But tellingly, the *Brookwood* majority did not find R.C. 3301.13's reference to R.C. Chapter 119 to be of significance in reaching its decision that the department of education's final decision was appealable. The majority there stated that R.C. 3301.13 merely provided "the general rule that the [department of education and state board] '[i]n the exercise of any of [their] functions or powers

* * * shall be subject to Chapter 119. of the Revised Code.' " (Second brackets and ellipsis added in *Brookwood*.) *Brookwood* at ¶ 6, quoting R.C. 3301.13.

{¶ 25} The dissent claims that its preferred result is "consistent" with our decision in *Brookwood*. *See* dissenting opinion at ¶ 55. Hardly so. The dissent would hold that the state board's decision under R.C. 3314.08(K) is appealable because of R.C. 3301.13, a notion implicitly rejected by the *Brookwood* court. This construction renders inconsequential the very provision that the *Brookwood* court found made "all the difference." *Id.* at ¶ 15. Our reading of the statute also finds support in a line of precedent from the Tenth District Court of Appeals—the court with the statutory directive to handle most administrative appeals, *see* R.C. 119.12(B)—holding that a statute's characterization of an administrative body's determination as "final" precludes an R.C. Chapter 119 appeal. *See, e.g., Carney v. School Emps. Retirement Sys. Bd.*, 39 Ohio App.3d 71, 72, 528 N.E.2d 1322 (10th Dist.1987) (the School Employees Retirement System's "final" decision on a person's entitlement to disability retirement benefits may not be appealed); *State ex rel. Shumway v. State Teachers Retirement Bd.*, 114 Ohio App.3d 280, 284, 683 N.E.2d 70 (10th Dist.1996), fn. 1 (the Ohio State Teachers Retirement System Board's "final" determination as to retirement compensation calculations is non-appealable); *Heartland Jockey Club, Ltd. v. Ohio State Racing Comm.*, 10th Dist. Franklin No. 98AP-1465, 1999 WL 566857, *1 (Aug. 3, 1999) (the State Racing Commission's "final" decision regarding horse-race simulcasting under R.C. 3769.089(E)(3) forecloses an appeal). Notably, this line of precedent is rooted in cases predating the enactment of the enrollment-review statute in 1997. *See* Am.Sub.H.B. No. 215, Ohio Laws, Vol. 147, Part I, 909, 1194. It is fair to presume that the legislature enacted the enrollment-review statute with knowledge of the judicial construction that had been afforded to administrative decisions statutorily designated as "final." *See Saccucci v. State Farm Mut. Auto. Ins. Co.*, 32 Ohio St.3d 273, 276, 512 N.E.2d 1160 (1987) (stating that the legislature is presumed to

know when words have been judicially defined and, when it uses that word, it is presumed to have used it in the sense so defined), citing *Tax Comm. of Ohio v. Sec. Savs. Bank & Trust Co.*, 117 Ohio St. 443, 450, 159 N.E. 570 (1927).

{¶ 26} Moreover, in *Brookwood*, this court cited that line of authority without any suggestion that those cases were wrongly decided. 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256, at ¶ 14. To the contrary, *Brookwood* found these cases distinguishable because of the existence in former 3314.015(B)(3) of "a specific, statutory grant of jurisdiction" to review a decision disapproving an entity for sponsorship of a community school. *Brookwood* at ¶ 15. No such distinction can be made in our case.

### IV. Conclusion

{¶ 27} When read in context of the entire statute, it is clear that "final" is used in its ordinary sense, marking the end of the enrollment-review statute's two-step review process. Accordingly, we hold that the state board's final determination that ECOT must repay some $60 million in excess funding cannot be appealed under R.C. Chapter 119.

Judgment affirmed.

O'CONNOR, C.J., and FISCHER and GWIN, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by DONNELLY and STEWART, JJ.

W. SCOTT GWIN, J., of the Fifth District Court of Appeals, sitting for BRUNNER, J.

_____

**KENNEDY, J., dissenting.**

{¶ 28} Because the established legal meaning of the word "final" is that the matter is concluded before a tribunal and subject to an appeal *if* one is otherwise provided by law, R.C. 3314.08(K)(2)(d) does not preclude appellate review of appellee the Ohio State Board of Education's ("the state board") "final"

determination that a community school owes money to the state. Rather, R.C. 3301.13 and 119.12 create the right to an administrative appeal from all adjudications of the state board, including an adverse funding determination made pursuant to R.C. 3314.08(K). Therefore, I would reverse the judgment of the Tenth District Court of Appeals affirming the dismissal of the administrative appeal filed by appellant, the Electronic Classroom of Tomorrow ("ECOT").

{¶ 29} R.C. 3314.08(K) establishes a procedure for appellee the Ohio Department of Education ("the department") to review payments to determine whether a community school has been overpaid or underpaid. If the department determines that a community school has been overpaid, then the school may appeal that determination to the state board. "Any decision made by the [state] board under [R.C. 3314.08(K)] is final." R.C. 3314.08(K)(2)(d). At issue in this case is whether the word "final" is synonymous with "not appealable."

{¶ 30} Resolving this question returns us to a familiar place: statutory interpretation. As we explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. In conducting this task, "we must examine the statutory scheme as a whole as well as the specific code sections immediately at issue." *Holben v. Interstate Motor Freight Sys.*, 31 Ohio St.3d 152, 156, 509 N.E.2d 938 (1987). "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 31} R.C. 3301.13 creates the department, which consists of "the state board * * *, the superintendent of public instruction, and a staff of such

professional, clerical, and other employees as may be necessary to perform the duties and to exercise the required functions of the department," *id*. That statute also provides that "[i]n the exercise of any of its functions or powers, including the power to make rules and regulations and to prescribe minimum standards the department * * *, and any officer or agency therein, shall be subject to Chapter 119. of the Revised Code." *Id*.

{¶ 32} With exceptions not relevant here, R.C. 119.12(B) states that "[a]ny party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin county." R.C. 119.01(D) defines "adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."

{¶ 33} We have long recognized that when R.C. 3301.13 and 119.12 are construed together, they create the right to an administrative appeal from an adjudication of the state board. *Union Title Co. v. State Bd. of Edn.*, 51 Ohio St.3d 189, 190-191, 555 N.E.2d 931 (1990). *See also Rossford Exempted Village School Dist. v. State Bd. of Edn.*, 45 Ohio St.3d 356, 362, 544 N.E.2d 651 (1989) (holding that an adjudication order of the state board resulting from quasi-judicial proceedings is "an appealable order pursuant to R.C. 119.12"), *superseded by regulation as stated in Union Title Co.* at 195; *Smith v. Granville Twp. Bd. of Trustees*, 81 Ohio St.3d 608, 616, 693 N.E.2d 219 (1998) ("the act of the State Board of Education disapproving a transfer of territory request pursuant to R.C. 3311.06 is a quasi-judicial act, and, as such, is appealable under R.C. 119.12"); *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, ¶ 34 (lead opinion) ("A decision of the State Board of Education on an R.C. 3311.24 transfer request is appealable under R.C. 119.12").

{¶ 34} In addition, R.C. 2505.03(A) provides that "when provided by law, the final order of any administrative officer, agency, board, department, tribunal, commission, or other instrumentality may be reviewed on appeal by a court of common pleas, a court of appeals, or the supreme court, whichever has jurisdiction." R.C. 2505.03(B) states that the procedures provided by Chapter 119 control in the case of an administrative appeal. Therefore, pursuant to R.C. 2505.03(A), the order of the state board must be final before it is appealable. *See Groveport-Madison Local Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 62 Ohio St.3d 501, 505, 584 N.E.2d 700 (1992); *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio*, 46 Ohio St.3d 147, 152-153, 545 N.E.2d 1260 (1989) (lead opinion); *id.* at 155 (Brown, J., concurring).

{¶ 35} R.C. 3301.13 provides that the department, which includes the state board, is subject to R.C. Chapter 119, and pursuant to R.C. 119.12(B), *any party* may appeal from *any order* in which the state board made an adverse decision affecting the party's rights, duties, privileges, benefits, or legal relationships. Further, when provided by law, the final order of *any* board or department may be appealed to a court of competent jurisdiction. R.C. 2505.03(A).

{¶ 36} This court has noted that " ' "[a]ny" means "one or some indiscriminately of whatever kind." ' " *Weiss v. Pub. Util. Comm.*, 90 Ohio St.3d 15, 17, 734 N.E.2d 775 (2000), quoting *State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 77 Ohio St.3d 338, 340, 673 N.E.2d 1351 (1997), quoting *Webster's Third New International Dictionary* 97 (1971). The word "any" is "inclusive," *The Way Internatl. v. Limbach*, 50 Ohio St.3d 76, 80, 552 N.E.2d 908 (1990), and "is often used as meaning 'all,' " *Wachendorf v. Shaver*, 149 Ohio St. 231, 240, 78 N.E.2d 370 (1948), or "every," *State v. Wells*, 146 Ohio St. 131, 137, 64 N.E.2d 593 (1945).

{¶ 37} Therefore, unless some other more specific provision creates an express exception to the statutory right to an administrative appeal afforded by R.C.

119.12(B), all final adjudication orders of the state board are appealable to the Franklin County Common Pleas Court pursuant to R.C. 3301.13 and 119.12(B).

{¶ 38} R.C. 3314.08(K)(1) allows the department to conduct a review of a community school's enrollment data on which the department bases the community school's funding. Relevant here is R.C. 3314.08(K)(2), which states:

> If the review results in a finding that additional funding is owed to the school, such payment shall be made within thirty days of the written notice. If the review results in a finding that the community school owes moneys to the state, the following procedure shall apply:
>
> (a) Within ten business days of the receipt of the notice of findings, the community school may appeal the department's determination to the state board * * * or its designee.
>
> (b) The [state] board or its designee shall conduct an informal hearing on the matter within thirty days of receipt of such an appeal and shall issue a decision within fifteen days of the conclusion of the hearing.
>
> (c) If the [state] board has enlisted a designee to conduct the hearing, the designee shall certify its decision to the [state] board. The [state] board may accept the decision of the designee or may reject the decision of the designee and issue its own decision on the matter.
>
> (d) *Any decision made by the [state] board under this division is final.*

(Emphasis added.) "If it is decided that the community school owes moneys to the state, the department shall deduct such amount from the school's future payments

in accordance with guidelines issued by the superintendent of public instruction." R.C. 3314.08(K)(3).

{¶ 39} The state board maintains that by making its decision "final" without also providing that the order is "appealable," R.C. 3314.08(K)(2)(d) precludes an appeal by a community school from the state board's adverse funding determination.

{¶ 40} The General Assembly has not provided a specific definition of the word "final" for purposes of R.C. 3314.08(K)(2)(d); we therefore must construe its meaning according to its common usage. *See* R.C. 1.42. However, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." *Id.*

{¶ 41} One definition of the adjective "final," as the majority points out, is " 'not to be altered or undone.' " Majority opinion at ¶ 14, quoting *Webster's Third New International Dictionary* 851 (1986). Under this definition, the state board's funding determination would be final, unalterable, and therefore not subject to any appeal. Not even the state board appears to believe that its decision is unalterable, however, because it asserts that its adverse funding determination may be challenged by ECOT (and therefore altered) in a mandamus action. If the state board's decision were truly unalterable, then it could not be undone by a tribunal.

{¶ 42} In any case, that is not the only definition of the word "final." It has acquired a more particular meaning in the law of "not requiring any further judicial action by the court that rendered judgment to determine the matter litigated; concluded. * * * Once an order, judgment, or decree is final, it may be appealed on the merits." *Black's Law Dictionary* 747 (10th Ed.2014); *accord Webster's Third New International Dictionary* at 851 (defining "final" as "ending a court action or proceeding leaving nothing further to be determined by the court * * * but not precluding an appeal"). In contrast, *Black's Law Dictionary* defines "final and

16

conclusive" as "[t]erminal and unappealable, except on grounds of procedural error, fraud, or mistake." *Black's Law Dictionary* at 747.

{¶ 43} As these definitions demonstrate, a decision that is "final" in the legal sense puts an end to the litigation before a particular tribunal but does not mean that the decision is unalterable on appeal. We pointed out in *Brookwood Presbyterian Church v. Ohio Dept. of Edn.* that "in our system of law, 'final' can mean the opposite of 'not appealable.' " 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256, ¶ 12.

{¶ 44} This understanding that a tribunal's order may be "final" yet nonetheless subject to an appeal is well established. As the late Justice Felix Frankfurter once noted, requiring finality as the test for appealability is "an historic characteristic" of appellate procedure. *Cobbledick v. United States*, 309 U.S. 323, 324, 60 S.Ct. 540, 84 L.Ed. 783 (1940). The requirement for finality existed in the common-law courts of England and was carried over into the federal Judiciary Act of 1789. *Id.* at 324-325; *McLish v. Roff*, 141 U.S. 661, 665, 12 S.Ct. 118, 35 L.Ed. 893 (1891). This court also accepted the common-law rule that a writ of error is not available until the matter before the inferior court is final. *State ex rel. Cook v. Ottinger*, 43 Ohio St. 457, 461, 3 N.E. 298 (1885); *Kinsley v. State*, 3 Ohio St. 508 (1854). The General Assembly extended the same rule to equitable matters in 1830. Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539, 549 (1932), quoting 29 Ohio Laws 90 ("appeals might be only from 'any final sentence or decree made in any cause in chancery' "). And Ohio has retained finality as a requirement for appealability in Article IV, Section 3(B)(2) of the Ohio Constitution and in statutes such as R.C. 2505.03, which establishes the general rule that all final orders—from judicial and administrative bodies alike—may be appealed to a court of competent jurisdiction.

{¶ 45} And the way that the General Assembly uses the word "final" in statutes addressing the appealability of final decisions confirms that the word "final" in R.C. 3314.08(K)(2)(d) does not mean "unalterable" or "not appealable."

{¶ 46} In Title 33 alone, for example, the General Assembly states at various points that a decision is "final," R.C. 3314.08(K)(2)(d), 3365.12(B)(2); "final and not subject to appeal," R.C. 3318.051(E); "final and is not appealable," R.C. 3311.0510(A); "final and conclusive and not appealable," R.C. 3345.76(A); and "final, except that the board of education of the school district affected by such a determination may appeal," R.C. 3316.03(E). *See also, e.g.*, R.C. 2505.03(A) (final order may be appealed); R.C. 3770.13(B)(5) ("An order of the court made under division (B)(4) of this section is a final and appealable order"). The General Assembly's use of different words—i.e., "final" and "not appealable"—signals that these words have different meanings. *Obetz v. McClain*, ___ Ohio St.3d ___, 2021-Ohio-1706, ___ N.E.3d ___, ¶ 21. Further, we are obligated to give effect to every word in a statute and avoid a construction that would render any provision superfluous. *Rhodes v. New Philadelphia*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 23. Construing the word "final" to mean "unalterable" or "not appealable" renders the words in the statutes mentioned above (and numerous other words or phrases in other statutes throughout the Revised Code) superfluous.

{¶ 47} But the word "final" is not synonymous with "appealable," either. Instead, the word "final," when used in the legal context of describing the effect of a tribunal's decision, means that the matter is concluded in that tribunal and subject to an appeal *if* one is otherwise provided by law. And because the General Assembly uses the word "final" consistently, a decision that is final may be appealable or not appealable, depending on the language of the relevant statute or statutory scheme either granting or denying an appeal. This construction therefore does not render any language superfluous—the phrases "final and appealable" and "final and not appealable" may each be given effect. In contrast, construing the

word "final" as meaning "unalterable" renders the statutory language that an appeal is "final and appealable"—i.e., unalterable yet appealable—unintelligible.

{¶ 48} The majority acknowledges that in the legal context, finality generally corresponds with appealability, in the sense that an order that is final in one tribunal may be appealed to another. Majority opinion at ¶ 15. Nonetheless, in construing R.C. 3314.08(K)(2)(d), the majority would apply the more literal usage of the word "final" to mean "unalterable" based upon the simple logic that because R.C. 3314.08(K)(2)(a) expressly permits an appeal from the department to the state board and because R.C. 3314.08(K)(2)(d) is silent on whether the final decision of the state board may be appealed, "final" must denote "unalterable." So, at its core, the majority's reasoning turns on applying a version of the interpretive canon *expressio unius est exclusio alterius*—which means that the expression of one or more items of a class implies that those not identified are to be excluded, *see State v. Droste*, 83 Ohio St.3d 36, 39, 697 N.E.2d 620 (1998).

{¶ 49} That analysis, however, depends on reading R.C. 3314.08(K)(2) in isolation and ignoring the statutory scheme that expressly provides for administrative appeals in general and appeals from the state board in particular. But as the late Justice Antonin Scalia has cautioned, "Statutory construction * * * is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear * * * or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Savs. Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

{¶ 50} That is the case here. In statutes expressing the effect of a final decision, the General Assembly—throughout the Revised Code and within R.C. Title 33—has used the word "final" in accordance with its established legal meaning: the matter is concluded before the tribunal and may—or may not—be

subject to appeal to another tribunal. The majority's grammatical argument is therefore unpersuasive, since it fails to account for the fact that there is no difference in the structure of a sentence saying that an order is "final," "final and appealable," and "final and not appealable." *See* majority opinion at ¶ 19.

{¶ 51} And because the majority reads R.C. 3314.08(K)(2) in a vacuum and out of context, it misses a key difference between R.C. 3314.08(K)(2)(a) and 3314.08(K)(2)(d). The General Assembly had not created a general right to appeal from a decision that has been made by the department to the state board, so R.C. 3314.08(K)(2)(a) is necessary to establish that right of review. In contrast, the General Assembly has provided a generally available right to appeal from the final adjudication orders of the state board, R.C. 3301.13, 119.12(B), and 2505.03(A), and it did not need to add language to R.C. 3314.08(K)(2)(d) to trigger the right to appeal an adverse funding determination. R.C. 3314.08(K)(2)(a) is not similar enough to R.C. 3314.08(K)(2)(d) for this court to draw an inference from the inclusion of right-to-appeal language in R.C. 3314.08(K)(2)(a) that the General Assembly must have meant to deny a right to appeal from the state board's adverse funding determination in R.C. 3314.08(K)(2)(d).

{¶ 52} "[T]his court has long recognized that the canon 'expressio unius est exclusio alterius' is not an interpretive singularity but merely an aid to statutory construction, which must yield whenever a contrary legislative intent is apparent." *Baltimore Ravens, Inc. v. Self-Insuring Emp. Evaluation Bd.*, 94 Ohio St.3d 449, 455, 764 N.E.2d 418 (2002). There is a well-established meaning of "final" in this context, which the General Assembly consistently uses in statutes relating to administrative appeals. The General Assembly also consistently uses express language when creating an exception to an otherwise-available appeal. After all, "expression unius est exclusio alterius is a double-edged sword." *Setser v. United States*, 566 U.S. 231, 238, 132 S.Ct. 1463, 182 L.Ed.2d 455 (2012). And while R.C. 3314.08(K)(2)(d) does not state that an adverse funding determination is

"appealable," it also does not include language that the state board's decision is "not appealable." The focus of R.C. 3314.08(K)(2)(d) is finality—other provisions in the Revised Code address appealability.

{¶ 53} For these reasons, the negative inference drawn by the majority has too little heft to demonstrate that the General Assembly *must have meant* to except an adverse funding determination by implication from the express right to appeal from the state board's final adjudication orders. *See United States v. Vonn*, 535 U.S. 55, 65, 122 S.Ct. 1043, 152 L.Ed.2d 90 (2002), quoting *Burns v. United States*, 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (" 'An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent' ").

{¶ 54} Rather, the General Assembly enacted statutes providing that all the state board's final adjudication orders are appealable, and the state board's adverse funding determination is an adjudication order that R.C. 3314.08(K)(2)(d) expressly makes "final." In the absence of more specific language to the contrary denying an appeal—and there is none here—the state board's order in this case is appealable.

{¶ 55} This conclusion is consistent with our decision in *Brookwood Presbyterian Church*, 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256. At issue in that case was R.C. 3314.015(D), which grants the right to an R.C. 119.12 appeal to any entity disapproved for sponsorship of a community school. A separate provision in that statute, R.C. 3314.015(B)(3), provides that the department's determination that the entity was not education-oriented "is final." We rejected the view that by using the word "final," the General Assembly intended to limit an entity's right to appeal under R.C. 3314.015(D) and 119.12. Rather, we explained that "[h]ad the General Assembly intended that the department's determination of whether an entity is education-oriented not be subject to administrative appeal, it could have done so by appropriate language, i.e., by

specifying that the department's decision is final and not subject to appeal." *Brookwood Presbyterian Church* at ¶ 13. We continued: "[B]y calling that determination 'final' but not calling it 'not subject to appeal,' the General Assembly has concluded that that judgment is susceptible of review pursuant to R.C. 119.12." *Id.* at ¶ 16. Therefore, the court declined to draw a negative inference from the statute's failure to state that the determination was both "final and appealable."

{¶ 56} *Brookwood Presbyterian Church* also distinguished decisions from lower appellate courts' holdings that a statute's characterization of an administrative body's decision as "final" precludes review through an R.C. 119.12 appeal, pointing out that none of those cases involved "a specific, statutory grant of jurisdiction to the trial court to review the decisions of the administrative body pursuant to R.C. 119.12." *Id.* at ¶ 15. But more importantly, those appellate court cases cited by *Brookwood Presbyterian Church* had not held that the use of the word "final" created an exception to an otherwise available right to appeal. Although the statute at issue in *Brookwood Presbyterian Church* involved the use of the word "final" in the same statute creating the right to a Chapter 119 appeal, for the reasons stated above, it is a distinction without a difference.

{¶ 57} Because R.C. 3314.08(K)(2)(d) does not expressly limit the right of appeal afforded by R.C. 119.12(B) and 2505.03(A), the Franklin County Common Pleas Court has subject-matter jurisdiction to review a community school's administrative appeal taken from a final order issued by the state board pursuant to R.C. 3314.08(K).

{¶ 58} Here, the state board issued a final order directing ECOT to repay $60,350,791 that it had received over the 2015-2016 school year and directing the department to collect the overpayment. ECOT had the right to pursue an administrative appeal as provided by R.C. 119.12. The court of appeals erred in upholding the dismissal of ECOT's appeal for lack of subject-matter jurisdiction.

22

{¶ 59} The majority's contrary conclusion results in this court's denying ECOT any opportunity to challenge the state board's order clawing back tens of millions of dollars. We granted the state board's motion to dismiss ECOT's mandamus action, in which it asserted that ECOT had an adequate remedy by way of this administrative appeal. *See State ex rel. Electronic Classroom of Tomorrow v. State Bd. of Edn.*, 150 Ohio St.3d 1426, 2017-Ohio-7567, 81 N.E.3d 1268. And today, the majority holds that ECOT has no right to an administrative appeal, recognizing that a mandamus action will lie to challenge the state board's adverse funding determinations in the future. Majority opinion at ¶ 7, fn. 2. But that revelation comes too late for ECOT.

{¶ 60} For these reasons, I would reverse the judgment of the Tenth District Court of Appeals and remand this matter to the Franklin County Common Pleas Court to hear ECOT's appeal. Because the majority does not, I dissent.

DONNELLY and STEWART, JJ., concur in the foregoing opinion.

_____

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Christopher J. Hogan, for appellant.

Organ Law, L.L.P., and Erik J. Clark, for appellees.

_____